## Foy-Proctor Company v. Marshall & Thorn.

(Decided March 24, 1916.)

### Appeal from Fayette Circuit Court.

1. Bailment—Care and Use of Property—Negligence.—In a contract of bailment wherein one lets a team for hire accompanied with

a driver who has complete charge of the team and who is in the employment and paid by the bailor, he not being subject to the control of the bailee except as to what he shall do, the bailor must bear the loss of any injury to the team while in use by the driver, in a suit by him against the bailee for such injuries.

2. Bailment—Master and Servant.—Under the facts stated first above, the driver of the team is the servant of the bailor and his acts in the management and control of the team are the acts of his employer, the bailor.

3. Action—Joinder.—An action strictly in tort can not be joined with an action on contract.

4. Bailment—Care and Use of Property—Negligence.—Where the plaintiff hired a team to the defendant for which the latter paid the former an agreed price, including the driver, and while the driver was using the team for the purposes for which it was hired, he negligently drove it so near to a dangerous place as to cause the foot of one of the animals composing the team to get into a hole whereby its leg was broken, resulting finally in the death of the animal, this negligence of the driver is not attributable to the one who hired the team from its owner, and he is not liable for the value of the mule in a suit against him based on the contract of letting by the owner to recover the value of the animal.

BAILEY D. BERRY for appellee.

CLINTON M. HARBISON and SAMUEL M. WILSON for appellant.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellees were engaged in the livery business in the city of Lexington and would when called on let and hire wagons and teams and a driver to go with and use them. The appellant was engaged under a contract which it had with the city of Lexington in constructing a viaduct in the city, and one morning it, through its manager, called the office of the appellees over the telephone and in the conversation a contract was agreed upon whereby the appellees let for hire to the appellant a wagon and team which was composed of two mules, and a driver for them was also furnished. This driver with the team was to do such hauling in its work of constructing the viaduct as appellant desired; it consisting of hauling material necessary therefor, principally sand and gravel. Appellees were to pay the driver, feed the team and take care of it and the wagon at night and other times when not being used by appellant. Appellant was not obligated to and did not do any of these things, nor did it have any control over the driver or team except to direct the former what was desired to be hauled and where

to haul it. For the use of this team and driver for the purposes stated, appellant agreed to pay a fixed and determinate sum, which was agreed to be accepted by the appellees.

Under this contract of bailment the team was sent one morning by appellees in charge of a colored driver named Reuben Montigue, who seems from the evidence to have been working for appellees in this capacity for quite a while. Along towards the close of the day Montigue was attempting to drive the team with a load of sand over a part of the viaduct, by one edge of which were some holes, and in some manner one of the mules got its foot into one of these holes, resulting in the breaking of its leg. After resorting to treatment in an effort to restore the broken limb it was discovered that this was impossible and the mule was finally killed. This suit was filed by the appellees as plaintiffs below against appellant as defendant, seeking to recover the value of the mule, which, after amendment, was fixed at $250.00, and the further sum of $50.00 for loss of time, medicines and a veterinary surgeon's bill in an effort to cure the mule, was claimed. The petition is based entirely upon the contract of bailment, and after stating therein the letting and hiring of the mules as well as the wagon and driver, and delivering same to the defendant, it continues thus: "Plaintiffs say that when said team of mules, wagon and driver were hired and let to defendant as hereinbefore set out, said mules were sound and in good condition and said defendant agreed and contracted with plaintiffs to use same in a prudent and careful manner and to return same to plaintiffs in sound and good condition. Plaintiffs say that said defendant has violated and broken said contract in that it failed to return said mules to plaintiffs in a sound and good condition, but, on the contrary, when defendant returned said team of mules to plaintiffs, one of them was badly bruised, lacerated, damaged and injured, and that defendant, its servants, agents and employes employed, used and operated and worked said mules in such a negligent and careless manner to cause the said bruises, laceration, damage and injury to the said mule to the value of said mule in at least the sum of one hundred dollars ($100.00)." (Afterwards increased by amendment to two hundred and fifty dollars.)

The defendant at the time of the filing of the suit was a non-resident corporation and the usual grounds

for an attachment in such cases were incorporated in the petition. In complying with the requirements of the code in such cases, as to the stating of the nature of plaintiffs' claim, the language used is this: ''The plaintiffs state further that the claim in this action against the defendant, the Foy-Proctor Company, a corporation, is for money due on a contract.''

The answer consisted of a general denial of the averments of the petition and in addition affirmatively alleged. that defendant never did take possession of the wagon or team, but that, on the contrary, the driver Montigue continued to remain in complete charge and control as well as the possession of them during the time they were in the service of the defendant. Upon the trial there was a verdict and judgment in favor of plaintiff for the full amount sued for, $300.00, and complaining of that judgment, an appeal is asked by motion made in this court.

Only one of the plaintiffs, Mr. Thorn, testified upon the trial. His testimony in the bill of exceptions is in narrative form, and after showing the contract and the nature of the letting and hiring, he says as follows: ''That the plaintiffs were, at the time of the accident complained of, engaged in the business of buying and selling mules, and, as livery men, in the business of hiring mules out, sometimes with wagons and drivers; that one day in June, 1914, defendant's foreman, C. A. Pavette, in charge of the construction of the West Main street viaduct at Lexington, Ky., called up Thorn over the telephone and ordered a wagon, a pair of mules and a driver to work by the day upon the viaduct job; that he, Thorn, thereupon sent the wagon, team and driver, as ordered; that in the said agreement of hiring there was no express understanding that the defendant should be responsible for the safety of the team; that the point was not mentioned; that the agreement of hiring was unusual in no respect; but was the ordinary contract of hiring a wagon, team and driver; that the driver sent by him in charge of the team was Reuben Montigue, a colored man chosen by the plaintiffs, paid by them, and being one who worked for them a great deal; that he was paid by them according to the time he was engaged in working for defendant; that in sending Reuben Montigue with the team he merely directed him to take the wagon and team and report to Pavette.''

The Mr. Pavette mentioned therein was the manager or foreman in charge of the work on the viaduct, and it is shown by the testimony of this witness that the contract was substantially as testified to by Thorn, and he states further as follows: "That on the morning of the accident the said Reuben had, at his direction, already hauled several loads of sand, traversing the same path across the viaduct that he was following when the accident occurred; that he, Pavette, nor any servant of the defendant, had not taken possession of the team on that day nor any control over the manner in which Reuben should drive the team, and that the team had not been out of Reuben's possession since it came to the viaduct that day to work."

Other testimony heard upon the trial did not substantially change the issues.

The court by instruction number one told the jury, in substance, that if it should believe from the evidence that the plaintiffs had no control of the use of the mules and that the driver was subject to the orders or control of the defendant, and that while same were thus in the possession of it, the mules were, under its direction, "used in a careless and negligent manner," by reason of which one of them was injured, then the verdict should be for the plaintiff. Another instruction submitted the converse of this, and still another was directed to the measure of damages.

Clearly the facts of this case constitute a bailment of hiring for the mutual benefit of both the bailor and bailee, and included in this bailment was that of the driver as well as the wagon and team. Under the law Montigue, the driver, continued to be the servant of the owner of the wagon and team, and his acts were those of the owners themselves. If the team, instead of being engaged in hauling sand, had been hauling passengers and they or any of them had been injured by mismanagement or carelessness of the driver, the owner would be responsible. This rule is stated in volume 19 A. & E. Ency. of Law, page 434, thus:

"A livery stable keeper who lets a horse or team and vehicle and furnished his own driver is bound to exercise ordinary care and skill to provide a careful and competent driver."

Further on and on the same page, in considering the degree of skill necessary to be possessed by the driver, it is said:

"All that can be required in such cases is that the driver shall be possessed of such skill, prudence, and experience as is usual and ordinary in persons engaged in the same occupation."

These rules will be found to be sustained by the courts of this country, as well as text writers, and we cite the following as having a more or less direct bearing thereon: Morris v. Trudo, 74 Atl. (Vt.) 387; Kellogg v. Church Charity Foundation, 96 N. E. (N. Y.) 406; Wilbur v. Forgione & Romano Co., 85 Atl. (Me.) 48; Garretson v. Rambler Garage Co., 136 N. W. (Wis.) 186; Stewart v. California Improvement Co., 63 Pac. (Cal.) 177, 52 L. R. A. 205; Standard Oil Co. v. Anderson, 212 U. S. 215, 53 L. Ed. 480; Hussey v. Franey, 91 N. E. (Mass.) 391; Fenner v. Crips, 80 N. W. (Iowa) 526; W. S. Quinby Co. v. Estey, 108 N. E. (Mass.) 908; Tornroos v. R. H. White Co., 220 Mass. 336, 107 N. E. 1015; Chapman v. People's Ice Co., 145 N. W. (Minn.) 1073.

Accepting the soundness of the rules just stated it is difficult to see upon what theory or line of reasoning that the bailee under circumstances similar to the ones here under consideration, would be liable for the management of the team when its management was delegated entirely and exclusively to the driver of the bailor, who himself, according to the rule, agreed with the bailee that such driver should be reasonably skilled in the performance of the work for which his services were let. Under the rule just considered there could be no question but that the bailor would be liable to the bailee for any damages which the driver with his team might inflict in the negligent and unskillful management of the team whereby the property of the bailee was injured or damaged. The proof wholly fails to show that the injury to the mule was through any negligence of the defendant or any of its agents or servants either in directing the driver where to go or how to go. It is true that the hole into which the mule fell was to say the least nearby the driveway, but it was plain to be seen, and it is shown that not only had this particular team been driven over that place all day, but others likewise, and there was ample space over which the drive could have been made with safety, and it is evident that the injury was the result of some fault of the driver or the unmanageable condition of one or both of the mules; at any rate, that it was produced by something for which

the defendant was not responsible. If, however, it should be insisted (for which there is no proof) that the driver was made to pass over a dangerous place by the defendant or its agents, it is exceedingly doubtful if it would be liable in that case, because the proof shows that the servants of plaintiffs were instructed by them to refuse to use the team in a dangerous place and to cease to work rather than do so, thus showing that these matters were left entirely by plaintiffs with the driver.

A case directly in point is that of Chapman v. People's Ice Co., 145 N. W. (Minn.) 1073. There the plaintiff had hired his team and driver to the defendant for the sum of $3.75 per day. The services consisted in scraping snow from ice and plowing the ice for the purpose of storing it for future use. The driver drove the team into a place where the ice had been cut and since which time only a thin covering of ice had been formed. The team broke through this thin ice and was drowned. The bailee in that case had failed to fence off in some way the place where the ice had been cut as required by the statute of the state of Minnesota. Still in a suit by the owner of the team against the ice company to recover the value of the mules, the plaintiff was defeated and the court in that opinion *inter alia* said:

"So far as reasonably necessary to care for and preserve the property, the driver, as plaintiff's representative, retained control of the team. He was in plaintiff's pay. He had been selected by plaintiff as a driver, and he was subject to the general orders of plaintiff. Had the plaintiff desired to discharge him or recall him and substitute another driver in his place, or direct him to another job, he could have done so. Defendant could not have done any of these things. Had it been dissatisfied with the service it could only have dismissed both man and team. On well settled principles Bruener was the servant only of plaintiff."

Manifestly, from what we have seen, defendant is not responsible on its contract under the facts and circumstances of this case, nor do we believe it is liable in tort. But in as much as the suit is based upon the contract of bailment exclusively, it is unnecessary to consider liability for the latter form of action. The case was submitted to the jury in such a way as to authorize it to return a verdict as though the action had been brought in tort. This was error, because there is noth-

ing in the petition to justify it, and if there had been, it would have been a misjoinder under section 83 of the Civil Code of Practice, as well as numerous decisions from this court, including the case of C. & O. v. Patton, 146 Ky. 656.

Appellant not being liable in tort, especially under the pleadings, and, as we have seen, there being none under the contract, the defendant's motion for a peremptory instruction should have prevailed.

The motion for the appeal is therefore sustained and the appeal granted, and the judgment is reversed, with directions to proceed in accordance herewith.