## Pope et ux. v. Cawood.

Feb. 5, 1943.

390

J. C. Baker, E. H. Johnson, E. C. O'Rear, and Wm. A Young for appellant.

H. C. Clay and J. B. Carter for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This action was brought by appellee, F. F. Cawood, hereinafter referred to as plaintiff, against H. H. Pope and wife, Kila Pope, hereinafter referred to as defendants, on a nulla bona under Section 439 of the Civil Code of Practice, to set aside a transfer of stock by Pope to his wife alleged to have been made for the purpose of defrauding creditors and especially plaintiff. The chancellor held the transfer void and ordered the stock sold to satisfy plaintiff's judgment after certain prior liens of creditors were paid. The defendants appeal.

In 1924 J. F. Cawood qualified as administrator of his brother S. M. Cawood, and W. M. Pope, H. H. Pope and F. F. Cawood with others signed his bond as sureties. The administrator defaulted, resulting in a suit being filed upon the bond by the heirs against the administrator and his sureties which terminated in a judgment against them for more than $40,000. See Cawood v. Cawood's Adm'x, 285 Ky. 201, 147 S. W. (2d) 88. All sureties except F. F. Cawood, W. M. and H. H. Pope were insolvent, leaving the judgment to be satisfied by these three gentlemen.

Motion to require plaintiff to elect which cause of action and which defendants he would prosecute was overruled, as was a motion to make more specific. A general demurrer was also overruled whereupon the joint and separate answer of H. H. and Kila Pope was filed, which was a traverse followed by an affirmative plea that she was not claiming a lien on the stock but was asserting title thereto.

We cannot agree with defendants that there was a misjoinder of parties defendant. Judgment was obtained against H. H. and W. M. Pope and F. F. Cawood. The latter satisfied it, thereupon the former two became liable to him for their proportionate part thereof, and an execution issued against them was returned "no property found" and he instituted this action under Section 439 of the Civil Code of Practice. In Sanders & Walker v. Herndon, 128 Ky. 437, 108 S. W. 908, 32 Ky. Law Rep. 1362, the judgment was against three sureties, two of whom satisfied it and jointly brought an action under Section 439 against the third surety, and it was there held there was no misjoinder of parties plaintiff. Conversely, where one surety brings suit against the other two under Section 439 there is no misjoinder of parties defendant. Certainly, defendants were not prejudiced by having W. M. Pope and his wife joined with them as defendants.

F. F. Cawood satisfied the judgment on Feb. 26, 1941, and took an assignment thereof from the heirs of S. M. Cawood. The following day he caused an execution to be issued against H. H. and W. M. Pope for their proportionate liability on this judgment amounting to $13,-049 each, which execution was returned "no property found." On March 1, 1941, F. F. Cawood brought this action under Section 439 of the Civil Code of Practice against H. H. and W. M. Pope and their wives. As W. M. Pope and wife are not directly concerned with this appeal, they will be dropped from the discussion. Also named as defendants were certain creditors who had liens on the property of H. H. Pope, as well as the Crummies Creek Coal Company, hereinafter referred to as the company, in which he owned 400 shares of stock which had been pledged as security for loans made him by these creditors. The petition as amended averred that about March 1, 1936, it became known that H. H. Pope would be liable on the judgment the heirs secured against

the administrator and the sureties on his bond, and that Pope assigned, transferred and encumbered his property for the fraudulent purpose of defeating the collection of the judgment mentioned and that his wife, Kila, was fraudulently claiming a lien upon the above mentioned stock.

It is obvious that defendants are wrong in their contention that an ex contractu action is here improperly joined with one ex delicto, and that under Sections 83 and 85 of the Civil Code of Practice the court should have sustained their motion to require plaintiff to elect which action he would prosecute. The authorities cited by defendant such as Foy-Proctor Co. v. Marshall & Thorn, 169 Ky. 377, 183 S. W. 940, L. R. A. 1916F, 1056, to the effect that an action on a contract cannot be joined with one in tort have no application because there was no such misjoinder here. It is just as obvious that the motion to require the petition to be made more specific was correctly overruled, since the petition alleged that the fraud charged was the transferring of property to another to defeat plaintiff in the collection of his claim. That is about as specific as language can make it. Nor did the court err in overruling the demurrer to the petition as amended as this was not a general allegation of fraud—which is a mere conclusion on the part of the pleader, Winberg v. Camp Taylor Development Co., 264 Ky. 612, 95 S. W. (2d) 261—but an averment that defendant was fraudulently disposing of his property to hinder and delay his creditors.

H. H. Pope formerly owned 700 shares of stock in the company but sold 300 shares years ago and this litigation involves 397 of the remaining 400 shares, as he had pledged the other three to his mother-in-law to secure a loan she made him. It appears that Mr. Pope was unsuccessful in some business ventures and became heavily involved in debt. Also, he incurred suretyship liabilities for considerable amounts in addition to signing the administrator's bond out of which this litigation arises. In 1932 he was indebted to the First State Bank of Harlan between $15,000 and $16,000, secured by 140 shares of this stock. This institution liquidated and Carlo B. Cawood, who was interested therein, had the note and collateral assigned to him. Pope owed something like $10,000 to the Citizens National Bank, secured by 100 shares of this stock, and 10 or 12 years ago

his wife's uncle, Judge Cam Ball, assumed the note and had the collateral assigned to him. In 1932 Pope became indebted to the Harlan National Bank for $15,-000 or $16,000, secured by 157 shares of this stock and 50 shares of Cumberland Hardware Company stock.

Mrs. H. H. Pope has successfully operated a boarding house for many years in Harlan and she is an industrious, intelligent lady and stands very high in her community. She testified that with the assistance and advice of her uncle, Judge Ball, she started in 1938 to work out her husband's financial difficulties during his absence and without his knowledge. She first obtained a list of his obligations and attempted to induce the principals to pay the notes upon which he was surety. She was unsuccessful in this and in May, 1939, the three principal creditors of her husband, the Harlan National Bank, Carlo Cawood and Judge Ball, assigned to her the notes they held against him aggregating $40,552.16 and transferred to her the 397 shares of stock securing same on condition that she execute her notes to them in the amount of their respective debts and secure same with the number of shares of this stock that each held as collateral. It is admitted no other consideration passed between them and Mrs. Pope. Nor did she pay her husband anything for the transfer to her of the stock. We deem it unnecessary to discuss her claim that he was indebted to her for supporting the family and advancing him money from time to time as there cannot be any merit therein. The old certificates representing 397 shares were surrendered to the company and on May 25, 1939, in the presence of her husband and the three above named principal creditors, the company issued new certificates in the name of Mrs. Pope for the 397 shares and she pledged same to Cawood, Ball and the bank to secure her notes.

The notes these three creditors had held against Mr. Pope contained a provision that in the event they were past due the holder without notice to the maker could sell privately or publicly the collateral. Mrs. Pope contends that under this provision the holder sold Pope's obligations and collateral to her. She further contends that as the notes of her husband aggregated $40,552.16 and the stock securing them was worth $39,-700 she could not be guilty of fraud on the plaintiff because the stock she obtained by the deal lacked $852.16

of securing the debt she incurred. She cites 27 C. J. 534, Section 224; Cavanaugh v. Riley, 19 S. W. 745, 14 Ky. Law Rep. 263; F. L. Spencer & Co. v. Caverhill (Iowa) 133 N. W. 450; Miles v. Miles, 6 Or. 266, 25 Am. Rep. 522; Randall v. Vroom, 30 N. J. Eq. 353, and other cases. An examination of these authorities reveals that she can obtain but little comfort from them. The furtherest any of them go is to the effect that a conveyance or transfer of property in consideration of the assumption of a lien or encumbrance is based upon a valuable consideration as against the grantor's creditors if the lien equals the value of the property.

In the instant case the indebtedness assumed did not equal the collateral transferred by the husband to his wife. Mrs. Pope testified that this stock was not worth over $100 per share at the time she took over her husband's indebtedness and did not think it would have brought that at a forced sale. She is supported in this testimony by her husband. But Carlo Cawood, a disinterested witness, thinks the stock was worth $125 per share and doubts if it could be bought for that. Elmer Hall, a coal operator in Harlan County, testified the stock was worth $150 per share as it paid 15% dividends annually. He was willing to buy $15,000 to $20,000 worth of the stock at this figure. Judge Ball testified he did not know its market value but it paid annual dividends ranging from 9 to 16%. Mrs. Pope countered that the war had put the stock up and she bought it in May, 1939, before war was declared the following September. But there is nothing in the record to support her assertion that the war caused the stock to advance materially in value.

Mrs. Pope had no property and her assumption of her husband's indebtedness did not better secure it, and the creditors relied entirely upon the collateral. They were safe in so doing because the dividends have been applied on the indebtedness and they have cut it something like one-half since she acquired the stock. If this stock was worth $125 per share, its value was $49,625, and at $150 per share, its value was $59,550. Therefore, we have no difficulty in agreeing with the chancellor that the assumption by Mrs. Pope of her husband's indebtedness, as that is what the transaction amounted to, in consideration of the collateral being transferred to her, was fraudulent insofar as the plaintiff was concerned be-

cause the collateral exceeded in value by a substantial sum the indebtedness she assumed. Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050; Campbell v. First Nat. Bank of Barbourville, 234 Ky. 697, 27 S. W. (2d) 975; Burnett's Adm'x v. Farmers' Nat. Bank of Danville, 243 Ky. 760, 49 S. W. (2d) 1033.

Mrs. Pope argues that the Campbell case just cited has no application since the consideration there paid by the wife was only $1,600 (represented by the assumption of a $900 lien against the property and the execution of a $700 note to her husband) while the value of the property was $7,000, and it was evident the property was worth $5,400 more than she paid her husband for it. In the instant case the collateral obtained by Mrs. Pope from her husband exceeded by more than $9,000, at the lowest figure put on the stock, the indebtedness she assumed. It was not until after 1936 when it became apparent that Pope would be liable on the administrator's bond he had signed as surety that his wife became concerned about her husband's indebtedness. That was about the time business in this county began to emerge from the depression and the stock became more valuable than the debt it secured. Mrs. Pope frankly says the reason she assumed her husband's indebtedness was to save something for herself and their children. This may have been commendable, but a court cannot allow it to work a detriment to the creditors of her husband. Viewing this record as a whole, we are confident the chancellor did not err in adjudging that the transfer of this stock to Mrs. Pope was void and that the stock remained in fact the property of her husband and subject to his debts. The judgment is supported by the evidence and there is not the least doubt in our minds that it is correct.

The judgment is affirmed.