# CHARLESTON

## BLAKE v. HOLLANDSWORTH.

Submitted June 13, 1911. Decided December 3, 1912.

1. ACKNOWLEDGMENT—*Certificate—Sufficiency.*

    A deed has two certificates of acknowledgment, immediately following one another, both dated the same day, one as to the husband the other as to the wife, the one as to the wife in full compliance with the statute and showing the official character of the officers making it, the one as to the husband though purporting to be made by persons of the exact names of those making the other certificate yet deficient in not describing them as officers authorized in the premises; HELD: The two certificates may be read together as one, or the certificate of the wife's acknowledgment may be resorted to for aid in supplying the omission of official character in the other. (p. 388).

2. LIMITATION OF ACTION—*Disability—Infancy—Coverture.*

    When the disabilities of infancy and coverture both exist at the time of the execution of a deed, the right to disaffirm con-

tinues until both disabilities are removed, and through the ordinary statute of limitations thereafter, without regard to the length of time which may elapse between the date of the deed and the time of disaffirmance. (p. 391).

3.   INFANTS—*Effect of Invalidity—Right of Heirs to Disaffirm.*
The privilege of disaffirming a deed for land, voidable because made in infancy, descends to heirs at the death of the person having the privilege. (p. 391).

4.   SAME.
Ordinarily a conveyance of land by an infant may be disaffirmed at any time that action for the land is not barred by the statute of limitations. (p. 392).

Appeal from Circuit Court, Cabell County.

Bill in equity by J. N. Blake and others against T. R. Hollandsworth and others. From a decree for defendants, plaintiffs appeal.

*Reversed and Remanded.*

*Switzer & Wiatt* and *Campbell, Brown & Davis,* for appellants.

*Holt & Duncan, Neal & Strickling,* and *R. L. Blackwood,* for appellees.

ROBINSON, JUDGE:

This suit is one by which plaintiffs claim title to a one-half undivided interest in certain land and seek partition thereof as against defendants.

The sole evidence of plaintiffs' title is a certified copy of a recorded deed, made by George Killgore and wife to Isaac Blake and Mary Ann Blake, his wife. Plaintiffs claim title as the heirs at law of Mary Ann Blake. It is submitted by defendants that the copy of the deed can not be read as evidence on account of defective certificate of acknowledgment thereto. The copy of the deed shows the following certificates:

"Virginia, Cabell County, to-wit:

I, Jerome Shelton, do certify that George Killgore whose name is signed to the writing hereunto annexed, bearing date on the ...... first of February, 1856, have acknowledged the same before me in my County aforesaid.

Given under my hand this 25th of February, 1856.

JEROME SHELTON    (Seal)
WM. MERRITT       (Seal)"

"Cabell County, to-wit:

We, Jerome Shelton and Wm. Merritt, Justices of the Peace in and for the County aforesaid, in the State of Virginia, do certify that Nancy Killgore, wife of George Killgore, whose names are signed to the writing above, bearing date on the 21st day of February, 1856, personally appeared before us in the County aforesaid being examined by us privily and apart from her husband, and having the writing aforesaid fully explained to her, the said Nancy Killgore acknowledged the said writing to be her act and declared that she willingly executed the same and does not wish to retract it.

Given under our hands this 25th day of February, 1856.

JEROME SHELTON, *J. P.*

WM. MERRITT, *J. P.*"

It will be observed that the first certificate does not show that George Killgore acknowledged the deed before an officer authorized in the premises, or indeed before any officer whatsoever.

That the first certificate standing alone is deficient can not be gainsaid. It does not directly show that Jerome Shelton was an officer who could take acknowledgments to deeds. For all that appears in it, he was only a private individual having no authority to do that which he certified. But in the certificate of acknowledgment as to the wife, immediately following, taken on the same day, and attached to the same instrument, the official character of Jerome Shelton as a Justice of the Peace of Cabell County, Virginia, clearly appears. Would it not be going far to say that this does not relate to the same Jerome Shelton who made the first certificate? Is it even probable that the husband acknowledged the deed before a Jerome Shelton who was not an officer and that on the very same day the wife acknowledged the deed before another Jerome Shelton who was an officer? If we may look to the instrument itself to aid a certificate of acknowledgment, as this court held in *Adams* v. *Medsker*, 25 W. Va. 127, and in *Oney* v. *Clendenin*, 28 W. Va. 34, surely where two certificates of acknowledgment are so closely related as are these two, we may look to the one to aid the other. We know in reason that it is beyond all probability that the Jerome Shelton named in the first certificate, and the Jerome Shelton and William Merritt who signed the same, were not

the same persons named in the other certificates as justices. We safely know that they were the same persons and that they were officers duly authorized.

The authorities sustain this view. We merely apply the same principles that were sanctioned in *Adams* v. *Medsker, supra,* and *Oney* v. *Clendenin, supra.* That the certificate of acknowledgment as to the wife may aid the certificate of the husband's acknowledgment, or the two be read as one, even for the supplying of omissions as to the official character of the persons before whom the husband's acknowledgment is taken, is directly held in *Wright* v. *Wilson,* 17 Mich. 192. That case is quite an exact precedent for this one. A leading author says: "It is proper in some cases to treat two certificates as one, where they appear to have been made at the same time and for the same purpose, and the defects of one may be thus supplied by reference to the other." Devlin on Deeds, sec. 485. Why may not the two certificates before us be treated as one? Under the old law existing at the time these certificates were made, it was quite usual to certify in one certificate both the acknowledgment of the husband and that of the wife taken separately. It was not necessary to make a certificate for each. There is strong reason because of the exact similarity of the names of Shelton and Merritt in both of the certificates before us, the fact that they were made on the same day and for the same purpose, and the fact that they relate to husband and wife, to treat them as one.

"It is the admitted policy of the law to uphold such certificates, when substance is found, and not to suffer the proofs of instruments to be defeated by technical and unsubstantial objections." *Oney* v. *Clendenin, supra.* In conformity to this admitted policy it has been held: "A literal compliance with the statutory forms of acknowledgment to conveyances is not exacted. A fair compliance is sufficient; and, to determine this, the certificate of acknowledgment may be read in connection with the deed. So, where there are two certificates to a mortgage, as in the case of a husband and wife, the certificates may be read in connection with the mortgage, and with each other, for the same purpose." *Frederick* v. *Wilcox,* 119 Ala. 355, 72 Am. St. Rep. 925. Other authorities in point will be found

by reference to 1 Am. & Eng. Enc. Law 546, and to 1 Cyc. 575, 584.

The certified copy of the deed on which plaintiffs rely as evidence of title in them is admissible for that purpose.

The same land that was conveyed jointly to Isaac and Mary Ann Blake by the Killgore deed was conveyed by them, in November, 1856, to John Morris, under whom defendants claim. At that time Mary Ann Blake was a married infant, as the evidence conclusively shows. She attained majority of age soon thereafter, but remained under disability of coverture until her death in 1895. Within all that time she neither affirmed nor disaffirmed her deed to Morris, voidable because of her infancy at the time of its execution. Isaac Blake, the husband, lived until August, 1901. Plaintiffs brought this suit in February, 1904, claiming title in the right of Mary Ann Blake by reason of the voidable deed, and seeking to be put into possession of the undivided one-half of the land by partition. Should there have been earlier disaffirmance of the voidable deed?

That disability of coverture postpones the time for disaffirmance of a married infant's voidable deed until the disability is removed, is an old doctrine fully established. "When the disabilities of infancy and coverture concur at the time of the execution of the contract, or the latter begins before the former is released, the right to disaffirm continues until both disabilities are removed, and until the statutory period thereafter, without regard to the length of time which may elapse between the date of the contract and the time of the avoidance." 16 Amer. & Eng. Enc. Law 299.

Plaintiffs may disaffirm the voidable deed in the right of their ancestor. The privilege of avoiding the deed did not die with Mary Ann Blake, but descended to plaintiffs as her heirs. Many authorities in point are cited in 16 Am. & Eng. Enc. Law 297.

Mary Ann Blake could not disaffirm her voidable deed until she was released from the disability of coverture. She remained under that disability all her life, since her husband outlived her. When she died, her rights in the land under the voidable deed vested in plaintiffs subject to the right of possession by the curtesy in the husband. So, plaintiffs could

not enter until that right of possession ended by the death of Isaac Blake in 1901. Until that time the right of possession by the curtesy was in defendants, having been transferred to them by the deed to Morris, which was good as to Isaac Blake. Thus defendants were entitled to enjoy possession of the land as a whole until 1901. Plaintiffs sued in good time after right of entry for the undivided one-half interest came to them. They had no right that they could assert during the life of Isaac Blake.

It is not shown that plaintiffs since they became vested have done anything constituting an affirmance of the voidable deed. Defendants' answers are denied and they offer no proof. Mere silence or inertness during the rightful possession of defendants can not bind plaintiffs in this particular. As long as they are not bound by considerations constituting affirmance, they may exercise the right to disaffirm at any time before their right to sue for the land is barred by the statute of limitations. *Gillespie* v. *Bailey*, 12 W. Va. 70. "No notice of disaffirmance is required. Entry or action suffices. Mere silence or inertness for any period short of bar to ejectment, unaccompanied by some confirmatory act, affirms not the conveyance." *Birch* v. *Linton*, 78 Va. 584. "The preponderance of authority is that, in deeds executed by infants, mere inertness or silence, continued for a period less than that prescribed by the statute of limitations, unless accompanied by affirmative acts, manifesting an intention to assent to the conveyance, will not bar the infant's right to avoid the deed." *Sims* v. *Everhardt*, 102 U. S. 310. In this connection a well-known book says: "By the authorities in this country, it would seem ordinarily that a conveyance of real estate, by an infant, may be disaffirmed at any time, so long as an action of ejectment is not barred by the statute of limitations." Tyler on Inf. & Cov., page 67.

The decree dismissing plaintiff's bill will be reversed and the cause remanded to be further proceeded in.

*Reversed and Remanded.*