In re ORLANDO COALS, INC., Debtor.

WEST VIRGINIA TRACTOR & EQUIPMENT CO., INC., Plaintiff,

v.

ORLANDO COALS, INC., Defendant.

Bankruptcy No. 80–10053.
Adv. No. 80–0115.

United States Bankruptcy Court,
S. D. West Virginia.

Oct. 31, 1980.

**722**

Marshall C. Spradling, Charleston, W. Va., for plaintiff, West Virginia Tractor & Equipment Co., Inc.

Joseph R. Goodwin, Charleston, W. Va., for defendant, Orlando Coals, Inc.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

The Plaintiff, West Virginia Tractor & Equipment Co., Inc., seeks a lifting of the automatic stay imposed by 11 U.S.C. § 362(a) to permit it to foreclose upon a coal preparation plant in the Debtor's possession secured by a deed of trust. In the alternative, the Plaintiff asks for adequate protection in the form of periodic monthly cash payments in an amount to be set by the Court.

The parties stipulated that the coal preparation plant was purchased from West Virginia Tractor by Orlando Coals, Inc., in October, 1976, for the cash price of $473,858. Subsequently, on July 18, 1977, the parties executed a promissory note, which was reexecuted on July 25, 1977, in the amount of $563,818.17. A deed of trust securing the note was then recorded on July 26, 1977, in the county in which the property is located. Although the deed of trust was signed by Harry C. Boggs, President of Orlando Coals, Inc., the acknowledgement, which certifies that Harry C. Boggs signed the deed of trust, is not in the corporate form prescribed by West Virginia law. In its answer, Orlando Coals, as debtor in possession, argues that the personal acknowledgement of Boggs is a defect which renders the recording improper. Thus, the security interest in the plant was not perfected at the time the Debtor filed for relief under chapter 11 of the Bankruptcy Code and the debt is unsecured.

West Virginia law requires the acknowledgement of certain instruments, including deeds of trust, prior to recordation. W.Va. Code § 39–1–2 (1966). A deed of trust not acknowledged in the prescribed manner is not "duly admitted to record" and is void as to subsequent creditors and purchasers without notice. W.Va.Code § 40–1–9 (1966); *Rothwell v. Brice,* 94 W.Va. 466, 119 S.E. 293 (1923); *Clarksburg Casket Co. v. Valley Undertaking Co.,* 81 W.Va. 212, 94 S.E. 549 (1917); *Cox v. Wayt,* 26 W.Va. 807 (1885). Section 39–1–9 of the West Virginia Code sets forth the form to be used for the acknowledgement of acts by corporations:

> The certificate of acknowledgement of a corporation may be in form or effect as prescribed in section four [§ 39–1–4] of this article as far as the words "do certify" and thence as follows: do certify that _____, who signed the writing above (or hereto annexed), bearing date the ____ day of _____, 19__, for _____ (name of corporation), has this day in my said county, before me, acknowledged the said writing to be the act and deed of said corporation. [W.Va. Code § 39–1–9 (1966).]

No cases have been decided by the West Virginia Supreme Court of Appeals construing this statute, which was last amended in 1933. Cases construing older versions of the statute, however, have held that sub-

stantial, not literal, compliance with the form prescribed by the statute was all that the law required. *Clarksburg Casket Co. v. Valley Undertaking Co., supra*; *Blake v. Hollandsworth,* 71 W.Va. 387, 76 S.E. 814 (1912); *Oney v. Clendenin,* 28 W.Va. 34 (1886); *see also* 1 Am.Jur.2d *Acknowledgments* § 64 (1962). The court may refer to the instrument being acknowledged to aid in construing the validity of the certificate of acknowledgement. *In re Smokeless Coal Co.,* 103 F.Supp. 348 (S.D.W.Va.1952); *Oney v. Clendenin, supra*; *Adams v. Medsker,* 25 W.Va. 127 (1884).

In the instant case, the deed of trust names the parties as Orlando Coals, Inc. and G. Thomas Battle and Charles L. Woody as Trustees. The signature lines on the last page of the instrument bear the handwritten inscription "Orlando Coals, Inc., Harry C. Boggs, President." The acknowledgement appears on the same page:

STATE OF WEST VIRGINIA,
COUNTY OF Gilmer TO—WIT:

I, E. B. Basham, a Notary Public in and for the State and County aforesaid, do certify that Harry C. Boggs, whose name is signed to the writing above, bearing date on the 25 day of July, 1977, has this day acknowledged the same before me in my said County.

Given under my hand this 26 day of July, 1977.

My commission expires the 26 day of September, 1986.

E. B. Basham
Notary Public Gilmer County,
West Virginia *

■ The acknowledgement was completed on a printed form intended to be used for personal acknowledgements. As such, it does not recite that Harry C. Boggs acknowledges that the writing is the act and deed of the corporation. Nonetheless, the deed of trust's recital of the name of Orlando Coals, Inc., as a party, and the signature of Harry C. Boggs as President of Orlando Coals, Inc., is sufficient to give notice to all who review the deed of trust

that it is, indeed, the act of the corporation, rather than the individual. It is the policy of the law to uphold certificates of acknowledgement which substantially meet the statutory requisites, and not to permit an instrument to be defeated by technical objections. *Blake v. Hollandsworth, supra*; *In re Smokeless Coal Co., supra.* While Boggs' official capacity is not mentioned in the acknowledgement, it is obvious that the notary public took the acknowledgement of the same Harry C. Boggs who had signed the instrument to be recorded in his corporate capacity as President of the corporation. The standard of sufficient compliance is met where the instrument and acknowledgement together demonstrate that the granting of the deed of trust is the act and deed of the corporation.

Since the deed of trust was properly acknowledged and recorded, the Plaintiff holds a security interest in the preparation plant. As such, it is entitled to adequate protection of that interest if the conditions of section 362 of the Bankruptcy Code are met.

■ Section 362(d)(2) provides that the court shall lift the automatic stay where the debtor has no equity in the property which is the subject of reclamation and the property is unnecessary to the effective reorganization of the debtor. Although the Plaintiff's reclamation complaint alleged the existence of these facts, contrary evidence was presented at the hearings held pursuant to section 362(e). At the close of the evidence, the Plaintiff conceded that the Debtor has equity in the plant, though in an uncertain amount. The Plaintiff also conceded that the plant was necessary to the effective reorganization of this Debtor. Thus, the Plaintiff failed to establish grounds for lifting the automatic stay under section 362(d)(2).

■ The Plaintiff, however, may be entitled to a lifting of the stay if it can show cause under section 362(d)(1), including lack of adequate protection. This Court has previously held that an equity cushion, such as

---

* The underlined portions signify handwritten insertions.

that established here, may adequately protect the creditor's security interest. It also recognizes that this equity cushion, left alone, diminishes over time as the debt balance increases due to accrual of interest and the value of the collateral decreases, generally, due to depreciation. At some point in time, these values converge, resulting in the absence of any equity cushion. This Court enunciated a test to be used to determine the time at which the equity cushion is sufficiently impaired to warrant a lifting of the stay or maintenance of the cushion. *See In re 5–Leaf Clover,* 6 B.R. 463, No. 80–50053 (Bkrtcy, S.D.W.Va. September 3, 1980) (publication pending). In the instant case, while the interest rate on the note was stated, there was no evidence as to the depreciation rate. Absent such evidence, the impairment date cannot be calculated with any degree of accuracy. However, the large amount, of equity, ranging from $1 million to $2.3 millions, presently provides adequate protection of the interest of this creditor. This finding does not preclude the Plaintiff seeking relief from the stay at a later time if it can demonstrate that the equity cushion no longer affords it adequate protection. Until that occurs, periodic cash payments will not be required.

Notwithstanding the protection of an equity cushion, the Plaintiff strongly urges that relief based upon the "balance of harm" test found in *Collier on Bankruptcy* supports its contention that the stay ought to be lifted. *Collier* bases its test upon the equitable nature of the bankruptcy court:

It must also be recognized that as a court of equity the bankruptcy court will be required to consider the impact of the stay on the parties and to consider the "balance of hurt" in fashioning relief. The method of adequate protection may vary. Where the nondebtor party is in the business of extending credit a moratorium in debt service if accompanied by measures to preserve the collateral value may suffice. If, however, the collateral and the obligation which it secures are the principal assets of a retired husband and wife, adequate protection of their interest may necessitate periodic cash payments. [2 *Collier on Bankruptcy* § 362.07 at 362–47 (15th ed. 1979).]

The Plaintiff equates its position with that of the retired husband and wife. Its vice-president testified that the debt owed to it by Orlando Coals constitutes twenty percent of the Plaintiff's net worth, and that the Plaintiff has a "serious cash flow problem" and is "on the brink of insolvency" itself. Thus, the Plaintiff concludes, the harm to it in continuing the stay is greater than the harm which would result to the Debtor if the stay were lifted.

The lack of payment by the Debtor may very well have contributed to the financial difficulties of the Plaintiff. Yet, it appears that the harm complained of by the Plaintiff here is largely self–inflicted. The evidence discloses that although the preparation plant has been in the Debtor's possession for four years, no payment was ever made on the note. No periodic payments were ever negotiated and no attempt was made to foreclose upon the collateral prior to the bankruptcy filing.

The one case found which follows *Collier's* test is *In re Epps,* 2 B.R. 737, 6 B.C.D. 379 (S.D.N.Y.1980). As in this case, the creditors were attempting to lift the stay to foreclose upon the mortgaged realty of the debtor. Epps had failed to make any payments for two years, and the creditors were obliged to pay taxes upon and maintain the property. However, prior to the bankruptcy filing, the creditors twice attempted to foreclose upon the property. In each instance, the foreclosure proceedings were stayed by the filing by the debtor of bankruptcy petitions—the first a chapter XI, and subsequently, chapter 13. In addition to these factors, the decision of the court was based upon the failure of the debtor's chapter 13 plan to comply with the requisites of chapter 13. The creditors objected to the plan because it provided for no payment of the arrearages on the mortgages and failed to provide for payment of priority taxes, including real estate taxes on the mortgaged property.

The facts of *In re Epps* are clearly inapposite to the factual situation presented in the instant case. The creditors in *Epps* attempted to remedy the situation on two different occasions prior to bankruptcy. Moreover, the court weighed the plight of the stayed creditors in conjunction with their treatment under the chapter 13 plan. It is apparent that the inadequacies of the plan combined with the court's finding of greater harm to the creditors justified granting relief from the stay.

■ This Court is skeptical of the efficacy of the balance of harm test. Absent other cause for relief, it is doubtful that, standing alone, a finding of greater harm to the creditor would establish cause for lifting the stay. Notwithstanding this conclusion, where the harm to the creditor is self-inflicted, the Court will not lift the stay based on a finding of greater relative harm. The Plaintiff willingly tolerated nonpayment for the four years prior to the bankruptcy filing. It is not the purpose of the Bankruptcy Code to "balance the harm" and afford a creditor better protection after the bankruptcy filing than it was content to endure prior to the filing.

The Court finds that the Debtor has a substantial amount of equity in the preparation plant, that the plant is necessary to the effective reorganization of the Debtor, and that the Plaintiff is adequately protected by the equity cushion. The Plaintiff has failed to provide the Court with sufficient cause for lifting the stay, thus, it will remain in effect. An order to this effect will be entered.