In re **WEATHERSFIELD FARMS, INC.**, Debtor.

**FIRST INTER–STATE BANK f/k/a Inter-State Trust Company also f/k/a First National Bank of White River Junction, Plaintiff,**

v.

**WEATHERSFIELD FARMS, INC.**, Defendant.

Bankruptcy No. 80–00191.
Adv. Proceeding No. 80–0110.

United States Bankruptcy Court,
D. Vermont.

Dec. 8, 1980.

Gary T. Brooks, Norwich, Vt., for plaintiff bank.

Michael J. McGarry, Burlington, Vt., for debtor-defendant.

## FINDINGS OF FACT, MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This is a proceeding for Relief from Automatic Stay instituted by the plaintiff pursuant to § 362(d) of the Bankruptcy Code. The plaintiff added to its complaint for relief a Motion to Dismiss the bankruptcy case which was filed under Chapter 11 of the Code. Both the complaint and the Motion were heard simultaneously.

### FINDINGS OF FACT

The debtor, Weathersfield Farms, Inc., by its president, Raymond A. Phelan, filed a voluntary petition for Relief under Chapter 11 of the Bankruptcy Code on August 29, 1980.

The debtor is a Vermont corporation organized February 1, 1971 under the laws of the State of Vermont with the name of "Weathersfield Farms, Inc." for the purpose of:

"1. Providing one or more self-contained communities for the emotionally disturbed and socially maladjusted, Weathersfield Farms, Inc., a non-profit educational and therapeutic institution, will help these individuals find meaning and purpose in their lives. To accomplish these goals, Weathersfield Farms, Inc. will offer a broad variety of constructive, supervised activities; the scope to include farming, gardening, forestry, arts, crafts, business and other vocational areas useful in creating a milieu that will afford a personal adjustment to reality and serve as bridge to the community outside.

"Weathersfield Farms, Inc. will also promote these concepts: that social service agencies, both private and public, will best contribute to the individual's needs through cooperative inter-action on a personal level; that a strong sense of family is highly desirable as is active involvement with community life."

The only asset of the debtor is a parcel of unimproved land on Potato Hill, so-called, in the Town of Thetford, Vermont, estimated to contain 250 acres, more-or-less, and this land was conveyed to the debtor by deed of Raymond Phelan, dated March 9, 1971, and recorded in Book 48, Pages 145–47 of Thetford Land Records.

On August 1, 1972 the debtor borrowed from the plaintiff bank the sum of $31,000.00 evidenced by a promissory note payable in monthly installments of $323.78 beginning September 1, 1972, and this note was secured by a mortgage on the land of the debtor dated August 1, 1972 and recorded in Book 49, Pages 595–598 of Thetford Land Records. The debtor defaulted by failing to make the payment due November 1, 1974 and it also failed to make any and all subsequent payments due under the terms of the Note and Mortgage.

By Warranty Deed dated January 11, 1978 and recorded January 12, 1978 in Book 58, Pages 163–165 of Thetford Land Records, the debtor transferred the land, without consideration, to Visualists/U.S.A., Inc., a New York corporation. This deed of transfer was prepared by Raymond A. Phelan, as president of the debtor corporation. It was motivated by a desire on his part to delay the service of any process by the bank in anticipated foreclosure proceedings. Phelan was the only stockholder in Visualists/U.S.A., Inc., a New York corporation, organized for the purpose of producing motion pictures and still photography. There was no intention on the part of Phelan to make Visualists/U.S.A., Inc. the real owner of the land but rather to cause a delay in the foreclosure proceeding in anticipation of making a settlement with the bank.

On February 11, 1980 the plaintiff-bank filed a Complaint for Foreclosure in the Superior Court of Orange County against Raymond A. Phelan, the debtor, Weathersfield Farms, Inc., and Visualists/U.S.A., Inc., as defendants, alleging default on the part of the debtor in not making payment of the installment due November 1, 1974 as well as any and all subsequent payments, and further alleging that the transfer by the debtor to Visualists/U.S.A., Inc., without consent of the plaintiff-bank, was in violation of the terms of the mortgage deed and that, therefore, the entire balance of the indebtedness at the option of the plaintiff bank became due and payable. This foreclosure action was the third one instituted against the debtor, the first two being dismissed because of improper venue and failure of service, respectively.

After a number of attempts to make service on the three defendants, including the debtor, the Clerk of Vermont Superior Court entered the defendants' default on May 28, 1980 and, on July 9, 1980 the Superior Court of Orange County entered a Decree of Foreclosure based on the default which Decree provided that unless the defendants, or any of them, paid to the Clerk of the Superior Court, the sum of $53,676.94 with interest on the amount of the principal sum taxes and costs at 9½% from May 8, 1980, on or before August 9, 1980, the defendants and all persons claiming under them would be foreclosed and forever barred from all equity of redemption in said premises. This Decree shortened the period of redemption from six months, which is usual in foreclosure proceedings, to 30 days.

The debtor, through its president, Raymond A. Phelan, attempted to set aside the mortgage foreclosure alleging in Affidavits filed the lack of proper service but it was unsuccessful and an Appeal to the Vermont Supreme Court was dismissed on July 25, 1980.

A Certificate of non-redemption and a copy of the Judgment Decree of Foreclosure were not filed in the office of the Town Clerk of Thetford before the date of the filing of the Chapter 11 petition on August 29, 1980.

The amount due to the plaintiff bank under the mortgage and Decree of Foreclosure as of the date of the filing of the Chapter 11 petition was $54,718.80.

On September 2, 1980 Visualists/U.S.A., Inc., through its president, Raymond A. Phalen, executed an agreement to turn over to the estate of the debtor all of the real estate in Thetford, Vermont which it alleged it held for the benefit of the debtor in Thetford, Vermont in which it had never had any interest other than to accept a deed and for which it paid no consideration.

The land in Thetford is ideally suited for the purpose for which the debtor corporation was organized i. e. the establishment of one or more self-contained communities for

the emotionally disturbed and socially maladjusted. It is situated in a secluded and wooden area with limited access. It lends itself auspiciously as a retreat or half way house for young people with alcoholic or drug problems where they can participate in outdoor living, cutting wood, gardening and thereby acquire a sense of self esteem with a therapeutic effect. This special use of the land is an integral part of the contemplated operation and it enhances its value.

About two years ago the plaintiff agreed to forego the mortgage indebtedness in exchange for 100 acres of the 250 owned by the debtor.

The fair market value of the approximately 250 acres of land is between $90,000.00 and $100,000.00. It is essential for any plan of reorganization by the debtor.

## MEMORANDUM AND ORDER

The plaintiff bank is seeking relief from the automatic stay imposed by Section 362 of the Bankruptcy Code so that it may implement or enforce its decree of foreclosure obtained from the State Superior Court on July 9, 1980. Under Section 362 the plaintiff is stayed from the commencement or continuation, including the issuance of process, of a judicial, *administrative, or other proceeding* against the debtor to recover a claim that arose prior to the commencement of the case; *from the enforcement of a judgment against the debtor or property of the estate; from any act to obtain possession of property of or from the estate; from any act to create, perfect or enforce any lien against property of the estate.*

■ The plaintiff is now seeking to obtain title to the land of the debtor pursuant to Section 362(d)(2) of the Code which permits the lifting of the stay if the debtor does not have equity in the property and such property is not necessary to an effective reorganization. It is obvious that the land is essential to an effective reorganization since it constitutes the only asset of the debtor. In addition the plaintiff has failed to prove that there is no equity in the property.

■ The testimony as to the value of the land is conflicting. The bank's expert witness, Marvin T. Gurman, testified that the fair market value as of September 25, 1980 was $50,000.00 whereas the debtor's president, who has held a real estate broker's license for about 10 years, valued the property at between $90,000.00 and $100,000.00.

Witness Gurman did testify that one of the factors favoring the property was that it has a "very sort of a get-away-from-it-all woodland setting which would have a recreational possibility". Such a use is consistent with that contemplated by the debtor and would tend to support its position as to value.

Certain timber rights would necessarily flow from the woodland which, according to the testimony of Phelan, were appraised by one Grossman at $25,000.00 to $30,000.00. The State of Vermont appraised the property in 1973 at $38,300.00 and real estate in Vermont generally, according to witness Phelan, has increased 10% yearly. This is not unreasonable. Therefore, according to Vermont State standards, the value of the land would be $74,633.00 and this without the timber rights. The opinion of Phelan as to value is substantiated by that of Russell Barrett, a forester, obtained by Phelan that as much as $10,500.00 could be realized from the sale of firewood.

The plaintiff itself must have realized that there was considerable equity in the property when it did about two years ago agree to accept 100 acres of the 250 owned by the debtor in full satisfaction of the mortgage indebtedness. This was according to the testimony of Phelan but it was not contradicted. The mortgage indebtedness at 9½% interest has indeed increased over the past two years but this has been offset by the 10% yearly appreciation in the value of Vermont land.

This Court is convinced that the value of the debtor's property as of the date of the filing of the petition was at least $90,000.00 which as against the mortgage indebtedness of $54,718.80 leaves an equity of approximately $35,000.00.

The plaintiff argues that legal title to the mortgage property passed to it as mortgagee when a condition of the mortgage was broken and that the defendant's equity of redemption was cut off by the decree of foreclosure. It asserts that the period of redemption did in fact end on August 9, 1980 and it then became entitled to possession of the property because equitable title passed to it on that date. The fallacy in the plaintiff's argument is that it fails to recognize the full force and effect of the statutory requirements for the cutting off of the equity of redemption of the debtor and the broad range of the automatic stay under the Bankruptcy Code.

■ Under Vermont State law in the foreclosure of the equity of redemption in lands, where the time of redemption has expired, the party obtaining the foreclosure shall cause to be recorded in the office where by law a deed of the lands is required to be recorded, within thirty days after the expiration of the time of redemption, a certified copy of the judgment. 12 V.S.A. 4529.

Such foreclosure shall not transfer title to such lands as against subsequent purchasers, mortgagees or attaching creditors, unless such copy of record or such decree or copy thereof is thus left for record, or is afterwards and prior to the acquiring of any interest in or lien on the lands by a purchaser, mortgagee or attaching creditor, left for record in like manner. If not thus left for record, such lands shall be subject to redemption by subsequent purchasers, mortgagees or attaching creditors, as though the time of redemption had not expired. 12 V.S.A. 4530.

■ The plaintiff had failed to comply with the requirements of these statutes as of the date of the filing of the petition by the debtor on August 29, 1980. As of then the debtor was in the position of a judicial lien creditor under the so-called "strong arm clause". See Sec. 544(a)(1) of the Bankruptcy Code which establishes a trustee as a judicial lien creditor. A debtor in possession has the same rights. Sec. 1107 of the Bankruptcy Code. See also 5 Collier 15th Edition 1107-5 which asserts that the debtor in possession has the rights of a trustee under Sec. 544(a).

As a judicial lien creditor the debtor is entitled to the protection of the automatic stay under Section 362 of the Bankruptcy Code which prohibits a creditor from any act to create, perfect or enforce any lien against property of the estate. Since the plaintiff failed to record prior to the filing of the debtor's petition, the equity of redemption was still outstanding in favor of the debtor as a lien creditor and the plaintiff is stayed from enforcing its lien.

■ The plaintiff has argued that title became vested in Visualists/U.S.A., Inc. by the transfer to it by the debtor on January 11, 1978 and it so remained on the date of filing. As a result it asserts that the property was not owned by the debtor and the automatic stay is not effective. The undisputed testimony, however, is that there was no intent to transfer the title to Visualists/U.S.A., Inc. and that it was made for no consideration merely to delay anticipated foreclosure proceedings while buying time to effect a settlement of the mortgage indebtedness with the plaintiff. Further, Visualists/U.S.A., Inc. did on September 2, 1980 execute an agreement to turn over the property to the debtor which it alleged it held for its benefit. As a result ownership by the debtor should be recognized.

■ The Bankruptcy Court is one of equity. Sec. 2(a) Bankruptcy Act. *Young v. Highbee Co.*, 324 U.S. 204, 214, 65 S.Ct. 594, 599, 89 L.Ed. 890. *Bank of Martin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197. One of the maxims of equity is that equity regards as done that which ought to be done; acts directed, agreed or intended to be done_____. The Court considers as actually having been performed acts which have been directed or which have been agreed or intended to be done, there being nothing to show that performance has in fact been prevented_____. This maxim is said to be the foundation of equitable property rights, estates and interests_____. A conveyance which ought to have been made may be treated as having been made. 27 Am.Jur.2d 653 Sec. 126. It

 

follows that for all intents and purposes the debtor owned the land when it filed its petition. Since it had substantial equity in the property, the plaintiff is not entitled to relief from the automatic stay. *In Re Clemente Estates.* 2 Collier 2nd Series 1003.

## AS TO DISMISSAL

The plaintiff seeks a dismissal on the grounds that the petition was not filed in good faith; that reorganization is not reasonably possible; that the debtor never conducted any business and that the only purpose for this proceeding is to avoid foreclosure of the mortgage.

█ On the other hand the debtor has not as yet filed a plan and, therefore, it has not been given the opportunity to sustain its burden of establishing good faith. It has, nevertheless, through the testimony of its president, indicated the formulation of a plan which will entail the acquisition of a Federal Grant which will provide the necessary cash to implement it; that the proposed plan will provide for the re-writing of the mortgage indebtedness to the plaintiff with the personal guaranty of the debtor's president; that he will provide the equity in his real estate in furtherance of the plan.

The debtor has indeed assumed a heavy burden but, in all fairness, it should be given an opportunity to submit a plan to which the plaintiff may then voice its objection. The record of the foreclosure proceedings in the State Superior Court as contained in plaintiff's exhibit # 5 raises serious questions about proper service on the defendants and especially as to the debtor. The Decree of Foreclosure was entered by default and provided for an unusually short period of only 30 days for redemption. The debtor, in spite of repeated efforts to reopen the default because of improper service, was denied the opportunity to offer testimony as to the value of its property and thereby gain the usual six months' period granted for redemption. Apparently the state court was convinced by the persuasive argument of the plaintiff that there had been no payments on the mortgage since 1974 and thereby disregarded possible equity in the debtor's land. Under the circumstances the debtor should not be denied an opportunity to submit a plan.

At the hearing the debtor's president testified that he would submit an individual financial statement within 15 days. He has not done so. In addition the debtor, under the Bankruptcy Code effective October 1, 1979, has the exclusive right to submit a plan within 120 days after its petition is filed. Sec. 1121(b). This period has expired but no plan has been received. The Court feels that further delay is not justified.

The plaintiff did on October 21, 1980 file an application for the appointment of a trustee. The grounds for ordering one are recited in Section 1104 of the Code but these were not supported by the evidence.

Upon the foregoing, IT IS ORDERED:

1. The plaintiff's complaint for relief from the automatic stay is dismissed.

2. The motion of the plaintiff to dismiss is denied.

3. The application for appointment of a trustee is dismissed.

4. The debtor shall file a plan supported by a verified financial statement of the debtor's president not later than December 24, 1980. Failure to comply shall result in relief to the plaintiff from the automatic stay and dismissal of the debtor's petition.