**In re JAMAICA HOUSE, INC., Debtor.**

**GREEN MOUNTAIN BANK, Plaintiff,**

v.

**JAMAICA HOUSE, INC., Defendant.**

Bankruptcy No. 83–4.
Adv. No. 80–0003.

United States Bankruptcy Court,
D. Vermont.

April 29, 1983.

$150,000.00 while the equipment, fixtures and furnishings, inventory and other personal property have a valuation of $16,000.00.

The real estate is subject to a first mortgage in favor of the Green Mountain Bank with a balance due on the principal of $90,000.00 and there have been no interest payments on this mortgage since 1981. This property is also subject to a writ of attachment in favor of Heaslip Fuels in the sum of $1,500.00. The debtor has outstanding against it federal income taxes of approximately $10,000.00; rooms and meals taxes owed to the State of Vermont of about $8,000.00; and real estate taxes to the Town of Jamaica in the sum of $1,740.82 which constitute an underlying lien against its real property.

At the time of the hearing the insurance policy on the Jamaica Inn premises had expired and the debtor, through its president, agreed to make payment of the premium within ten days.

Kenneth V. Fisher, Jr., Brattleboro, Vt., for Green Mountain Bank.

Alan R. Medor, Rutland, Vt., for debtor.

CHARLES J. MARRO, Bankruptcy Judge.

## MEMORANDUM AND ORDER

The Complaint of the Green Mountain Bank for Relief from Automatic Stay, pursuant to Section 362(d), came on for hearing after notice. From the records in the case and the testimony adduced at the hearing the following facts have been established:

Jamaica House Inc. filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 6, 1983. Its schedules show total liabilities of $120,285.78 and assets of $177,700.00. The debtor operates a restaurant and lodging business under the name of "Jamaica House". Its principal assets consist of real estate made up of the Jamaica Lodge or Inn and a small parcel of land together with fixtures, equipment and inventory. The value of the real estate is

## DISCUSSION

The only witness at the hearing was Robert Pugliese, President of the debtor, who testified that he had had an appraisal made of the real estate together with the personal property contents and the total valuation was fixed at $166,000.00 with which he was in agreement. This testimony was not disputed. Although the debtor owes federal income taxes of approximately $10,000.00 and rooms and meals taxes to the State of Vermont of about $8,000.00 there was no evidence introduced to indicate that these taxes were a lien against the property of the debtor. Therefore, it appears that the real estate mortgage with a principal of $90,000.00 outstanding in favor of the Green Mountain Bank together with interest from 1981, the attachment of $1,500.00 in favor of Heaslip Fuels and the real estate taxes of $1,740.82 owing the Town of Jamaica are the only liens against the property of the debtor. When the total secured indebtedness of $93,240.82 is subtracted from the asset valuation of $166,000.00 it is

clear that there is a considerable equity cushion. Under Section 362(d) of the Bankruptcy Code the Court shall grant relief from the automatic stay such as by terminating, annulling, modifying or conditioning such stay if either of the two following conditions exist:

(1) for cause, including the lack of adequate protection of an interest in property of the party in interest (in this case the secured party) *or*

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

It clearly appears that there is substantial equity in such property and, since the business of the debtor is the operation of an Inn and Restaurant, the property is necessary for reorganization. There has not been any evidence introduced that there cannot be an effective reorganization in this case. As a matter of fact the debtor has not, as yet, filed a Disclosure Statement or submitted a Plan. This Court did in the case of *In Re Weathersfield Farms, Inc.* (District of Vermont) 11 B.R. 148 continue the automatic stay on the grounds that the debtor had equity in property subject to a mortgage and that the property was necessary for an effective reorganization.

It is apparent that the Bank has failed to satisfy the second alternative condition under § 362(d) which would entitle it to relief from stay. As a result the cause upon which the plaintiff must rely for a termination or modification of the stay is lack of adequate protection of its secured interest in the real estate and personal property of the debtor. It argues that its security is jeopardized since there is no showing that the debtor can or will be in a position to pay its current debts; pay its current mortgage obligations; pay its real estate taxes; or cure the acceleration of the plaintiff's mortgage as it has a right to do pursuant to Section 1124(2) of the Bankruptcy Act, namely clear up and pay back payments now amounting to $26,580.00.

The Bankruptcy Code does not attempt to define or illustrate adequate protection but § 361 does give three illustrations whereby adequate protection may be provided i.e. (1) requiring the trustee (the debtor in a chapter 11 proceeding) to make periodic cash payments; (2) furnishing to the holder of an interest in property an additional or replacement lien; (3) granting to such entity such other relief, other than compensation allowable under § 503(b)(1) as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. However, these methods of providing adequate protection were neither intended to be exclusive nor exhaustive. This is indicated in the legislative history of § 361—House Report No. 95–595 (1977) pages 338–339, U.S.Code Cong. & Admin. News 1978, p. 5787. See also *In Re Accent Associates* (D.Mass.1981) 8 B.R. 933.

The legislative history points out that § 361 does not specify how value is to be determined, nor does it indicate when it is to be determined; that these matters are left to case-by-case interpretation and development; that it is expected that the courts will apply the concept in light of facts of each case and general equitable principles; that it is not intended that the courts will develop a hard and fast rule that will apply in every case. The Bankruptcy Courts have been following this legislative directive. *In Re San Clemente Estates* (S.D.Cal.—1980) 2 C.B.C.2d 1003, 5 B.R. 605; *In Re Pannell* (E.D.Pa.1981) 4 C.B.C.2d 866; 12 B.R. 51; *In Re Cooper* (E.D.Pa.1982) 22 B.R. 718, *In Re Monroe Park* (U.S. District Court—Delaware 1982) 6 C.B.C.2d 139, 17 B.R. 934.

█ It has been generally held that an equity cushion in and of itself may be sufficient to constitute adequate protection of a secured creditor's interest to sustain the automatic stay. *In Re Tucker* (S.D.N.Y. 1980) 2 C.B.C.2d 535, 5 B.R. 180; *In Re Vincent* (M.D.Fla.1980) 7 B.R. 866; *In Re Gaslight Village, Inc.* (D.Conn.1981) 8 B.R. 866 *In Re Alyucan Interstate Corp.* (D.Utah —1981) 4 C.B.C.2d 1066, 12 B.R. 803; *In Re*

*Penn York Manufacturing, Inc.* (M.D.Pa.—1981) 4 C.B.C.2d 965, 14 B.R. 51.

Some courts have qualified the foregoing rule that an equity cushion may in and of itself be sufficient to constitute adequate protection. See *In Re Monroe Park, supra,* 6 C.B.C.2d at page 143 where the court pointed out that generally, an equity cushion provides adequate protection only if the creditor may foreclose upon the collateral and realize an amount sufficient to cover fully the entire balance due on the debt. See also *In Re 5-Leaf Clover Corp.* (S.D. West Virginia) 6 B.R. 463. Collier recognized the foregoing qualification and expresses it as follows:

> "Thus an adequate 'cushion' can itself constitute adequate protection with nothing more if care is taken to preserve the cushion." 2 Collier 15th Ed. 361–10 § 361.01.

And in the case of *In Re Pine Lake Village Apartment Co.* (U.S. District Court, S.D.N.Y.—1982) 21 B.R. 395, 397 the Court said:

> "Unquestionable, a secured creditor has the right to be protected against any decline in value that the collateral could suffer if an automatic stay was in effect since, absent the stay, the creditor would foreclose, preventing any further loss in the value of the security."

Otherwise put, under bankruptcy law, adequate protection generally is meant to preserve the secured creditor's position at the time of bankruptcy. *In Re Nixon Machinery Co.* (E.D.Tenn.1981) 9 B.R. 316.

In the instant case the debtor has not made any mortgage payments to the plaintiff since 1981. This situation was apparently tolerated by the secured creditor. Under such circumstances and with considerable equity in the property the plaintiff would ordinarily not be entitled to lifting of the stay upon the "balance of harm" test. *In Re Orlando Coals, Inc.* (S.D.West Virginia—1980) 6 B.R. 721. Under this test the Court will be required to consider the impact of the stay on the parties in fashioning relief. 2 Collier 15th Ed. 362–49.

In the light of the foregoing case law it seems abundantly clear that the plaintiff is not entitled to a lifting of the automatic stay. On the other hand the bank's position should not be prejudiced by allowing the debtor to accumulate unpaid real estate taxes which are an underlying lien against the Lodge premises. In addition the debtor should not be permitted to sit coyly back and neglect to file a disclosure statement and plan. The plaintiff is entitled to an early determination as to the feasibility of a successful reorganization so that its equity may be protected as much as possible.

### ORDER

In accordance with the foregoing,

IT IS ORDERED that the automatic stay prescribed by § 362 of the Bankruptcy Code is continued subject to the following:

1. The debtor shall pay all delinquent real estate taxes not later than May 20, 1983.

2. The debtor shall keep current all insurance premiums and taxes assessed for 1983.

3. The debtor shall file a disclosure statement and plan with this Court not later than May 20, 1983.