**In re TREASURE VALLEY OPPORTUNITIES, INC., Debtor.**

**John KROMMENHOEK, Trustee, Plaintiff,**

**v.**

**NATURAL RESOURCES RECOVERY, INC., and Does I through V, inclusive, Defendants.**

Bankruptcy No. 92–31852.
Adv. No. 92–6274.

United States Bankruptcy Court, D. Idaho.

April 1, 1994.

Barry Peters, Boise, ID, for plaintiff.

Kimbell D. Gourley, Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, ID, for defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

The present adversary proceeding is brought by John Krommenhoek ("trustee"), the chapter 7 trustee for Treasure Valley Opportunities, Inc. ("debtor"), to avoid an alleged fraudulent transfer to Natural Resources Recovery, Inc. ("NRR"). On January 10, 1994, this Court denied NRR's motion for summary judgment. NRR filed a motion to reconsider and alternative motion in limine. The trustee also filed a motion to alter or amend the summary order. Hearing on these motions was held on March 2, 1994.

The transaction at issue in this case involves a contract by the debtor for the construction of a wood pellet production plant. On April 30, 1991, the debtor and NRR entered into a contract for NRR to build the plant for a total purchase price of $97,780.00. The contract provided for the purchase price to be paid in 5 installments: "15% with receipt of order[;] 15% on submittal of approval drawings[;] 50% after receipt of manufacturing materials[;] 15% on shipment or offer to ship[; and] 5% on acceptance." Affidavit of Christopher T. Sharron filed October 25, 1993, Docket No. 19, exhibit entitled System Pricing.

Two payments are alleged by the trustee to be fraudulent transfers. The first is a payment of $14,667.00 made on May 3, 1991, and representing the first contract payment of 15% of the purchase price. The second is a payment of $40,000.00 made on June 28, 1991. This second payment was in response to a letter and invoice dated June 4, 1991. The letter, from Francis M. Sharron, president of NRR, to the debtor, stated that "enclosed is an invoice for payment on drawing submittal and a portion of equipment already purchased for your system." Affidavit of Francis M. Sharron filed October 25, 1993, Docket No. 20, exhibit. The invoice notes a charge of $14,667.00 for "Progress payment # 2," and an additional charge of $10,000.00 for "Hammermill & Pellet Mill purchased," for a total amount due of $24,667.00. The debtor filed its petition under chapter 7 on March 18, 1992.

The trustee contends the payments are a fraudulent transfer because the debtor did not receive reasonably equivalent value; the debtor actually received virtually nothing from NRR, and the value of the work performed by NRR up to the time it received the payments was less than the amount of the payments. NRR contends it is entitled to summary judgment against the trustee.

Two arguments are presented in support. First, NRR argues that "pieces" of the contract should not be independently evaluated to determine whether the elements of a fraudulent transfer are found; instead, the trustee's cause of action should stand or fall on the value of the entire contract. Second, NRR contends the funds used by the debtor to make the payments were not, in fact, property of the debtor and therefore there was no fraudulent transfer.[1]

## STANDARDS OF LAW

■ The underlying motion is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Fed.R.Bankr.P. 7056. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

---

1. Because NRR is entitled to summary judgment on the issue of reasonably equivalent value, the Court does not address this second argument.

evidence is construed in the light most favorable to the nonmoving party, and the moving party bears the burden to show the absence of any genuine issue of material fact. *Hopkins v. Andaya*, 958 F.2d 881, 884 (9th Cir. 1992). "However, once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence sufficient to support a jury verdict in [his] favor." *Hopkins, supra*, 958 F.2d at 884–85.

### DISCUSSION

■ This action is brought under 11 U.S.C. § 548(a)(2).[2] The Ninth Circuit Court of Appeals has noted that four elements must be shown for a transfer to be avoidable under that section. These elements are:

(1) the transfer must have involved property of the debtor; (2) the transfer must have been made within one year of the filing of the petition; (3) the debtor must not have received reasonably equivalent value in exchange for the property transferred; and (4) the debtor must have been insolvent, been made insolvent by the transaction, be operating or about to operate without property constituting reasonable sufficient capital, or be unable to pay debts as they become due.

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 594 (9th Cir. 1991). The burden is upon the trustee to show each element of a fraudulent conveyance in order to recover under section 548. *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 466 (4th Cir.1990).

NRR argues that the transaction between the parties should not be dissected into its various payments, but instead the transaction as a whole should be examined. NRR notes the trustee nowhere disputes that the contract as a whole was for reasonably equivalent value. The trustee only argues the payments were not for reasonably equivalent value at the time the payments were actually made.

### I. Definition of "Reasonably Equivalent Value."

Disposition of this issue turns upon whether the debtor received reasonably equivalent value from NRR in exchange for the payments. Section 548 defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). In examining whether reasonably equivalent value was provided, "the analysis is 'directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost.'" *United Energy Corp.*, 944 F.2d at 597 (quoting *Martin v. Phillips (In re Butcher)*, 58 B.R. 128, 130 (Bankr.E.D.Tenn.1986)).

*United Energy Corporation* further clarified the definition of "reasonably equivalent value." While the term "antecedent debt" is not defined in the Bankruptcy Code, the Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12); 944 F.2d at 595. "Claim," in turn, means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

**2.** Section 548 of the Bankruptcy Code provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
\* \* \* \* \* \*
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(B)(i) was insolvent on the date that such transfer was made or such obligation was in-

curred, or became insolvent as a result of such transfer or obligation;
(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
11 U.S.C. § 548(a)(2).

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; . . . .

11 U.S.C. § 101(5); 944 F.2d at 595. "Thus, it is plain that Congress intended 'debt' and, therefore, 'antecedent debt,' to be construed broadly." 944 F.2d at 595.

■ The time at which "reasonably equivalent value" is determined is the time of the transaction. *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.),* 6 F.3d 1119, 1127 (5th Cir.1993); *Morris Communications,* 914 F.2d at 466. Subsequent appreciation or depreciation should not, and does not, transform a transfer for reasonably equivalent value into a fraudulent transfer. 4 Lawrence King, *Collier on Bankruptcy* ¶ 548.09[1] at 548–116 (15th ed. 1993).

## II. *NRR Provided "Reasonably Equivalent Value" to the Debtor.*

■ Based on the uncontradicted evidence, I find the payments to NRR were made for reasonably equivalent value. In making the payments to NRR, the debtor obtained two benefits: (1) discharge of the obligation to pay NRR under the contract terms; and (2) property in the form of the continued vitality of the contract.

It is the second benefit that is decisive in the present case. The debtor purchased a contract to produce a wood pellet manufacturing plant for $97,780.00, and it is conceded by all parties that the value of the completed contract would have been at least $97,780.00. In entering into the contract, the debtor exchanged an obligation to pay $97,780.00 for the contractual right to an asset worth $97,780.00. Payments made by the debtor to-

ward that goal acted both to keep the contract in force, and to decrease the amount due for receiving the asset. The value received by the debtor in making the $14,667.00 down payment, for example, was a $14,667.00 interest in the contract. In other words, each payment toward the contract was the purchase of an interest in the contract equal to the amount of the payment.

Moreover, the contract contained no restrictions against assignment. By making the payments, the debtor obtained a contractual interest capable of being sold to a third party. The contractual interest, equal to the value of the debtor's payments, was therefore an asset in a substantial sense. In providing for the assumption and assignment of executory contracts, the Bankruptcy Code itself recognizes that such contracts can be valuable assets of the estate. *See* 11 U.S.C. § 365.

The fact the contract was not completed due to the debtor's default does not change this conclusion. As previously noted, the determination of reasonably equivalent value is made as of the time each payment was made. At the time of those payments the contract was a valid, binding obligation on both the debtor and NRR. The contract only became worthless in the future, when the debtor defaulted.

The trustee cites authority to the effect that a promise of future performance cannot serve as "reasonably equivalent value." *See Wootton v. Ravkind (In re Dixon),* 143 B.R. 671, 681 (Bankr.N.D.Tex.1992);[3] *Bailey v. Metzger, Shadyac & Schwarz (In re Butcher),* 72 B.R. 447, 449–50 (Bankr.E.D.Tenn. 1987).[4] To the extent that such authority suggests a valid, enforceable contract can never qualify as value, I decline to follow it. As one treatise on bankruptcy has stated:

Courts in several cases have opined that the Code's definition of value leaves "no

---

**3.** *Dixon* held, as an alternative to the main grounds of its decision, that a transfer of money and art to an attorney as a flat fee to represent the debtor in criminal proceedings was a fraudulent transfer. The transfer had been made in contemplation both of bankruptcy and of the possible confiscation of the debtor's assets under criminal law. No criminal proceedings had commenced at the time of the transfer, nor

would such proceedings commence until three years later.

**4.** *Butcher* held that a $50,000 retainer paid to an attorney for legal services to be rendered to the debtor's wife and children in the future was a fraudulent transfer.

room for a mere executory promise from the transferee as constituting that value." Yet, the only executory promise that the definition explicitly excludes from the meaning of value is such a promise "to furnish support to the debtor or to a relative of the debtor." The strong negative implication of this exclusion is that any other kind of enforceable executory promise is value for purposes of section 548. Moreover, the "property" component of the definition of value is surely wide enough to reach executory promises.

2 David Epstein, Steve Nickles, and James White, *Bankruptcy* § 6–49 at 21 (1992) (footnotes omitted). *See Christians v. Crystal Evangelical Free Church (In re Young),* 148 B.R. 886, 891–93 (Bankr.D.Minn.1992) *aff'd,* 152 B.R. 939 (D.Minn.1993) (extensive discussion of executory promises as constituting "value;" the court held a church did not make an executory promise to provide services in exchange for tithes paid by debtor, and therefore the tithes were avoidable as a fraudulent transfer). *See also Freitag v. The Strand of Atlantic City,* 205 F.2d 778, 784 (3d Cir.1953) (executory promise may be property and "fair consideration" within the terms of the Uniform Fraudulent Conveyance Act); Uniform Fraudulent Transfer Act § 3 comment 4, 7A U.L.A. 651–52 (1985) (Uniform Fraudulent Transfer Act adopts view of cases holding that an executory promise may be value).

Moreover, the authorities noted by the trustee base their conclusion that executory promises cannot be fair value on statements to that effect in *Collier on Bankruptcy. Dixon,* 143 B.R. at 681; *Butcher,* 72 B.R. at 450. Even *Collier* qualifies this broadsweeping language.

> When the thing promised cannot benefit the creditors, an executory promise is certainly to be condemned. When, however, the promisor is solvent and the promise is enforceable, unless it is a mere promise of support, a transfer to him in exchange for his promise should not be held necessarily and automatically to have no value, especially when the promise has been partially or totally fulfilled in good faith and the creditors have profited by a reduction of

their debtor's obligations after the transfer was made.

> 4 *Collier on Bankruptcy* ¶ 548.09[1] at 548–118 (footnote omitted).

In the present case, the debtor entered into a contract to obtain a wood pellet production plant. The price of the contract was reached through arm's length bargaining, and the completed plant would have been worth at least that price. In addition to being a tangible asset capable of being subject to levy by creditors, a wood pellet production plant would also appear to carry at least the potential of producing income. NRR began performance of the contract in good faith, and there is no evidence the debtor made the payments in anything other than good faith. Had the promise been performed, the creditors of the debtor would certainly have benefitted. Under these circumstances, the contractual right to the plant was reasonably equivalent value for the payments made by the debtor under that contract.

The trustee also contends, in effect, that "reasonably equivalent value" only includes tangible goods and services actually received by the debtor. This construction of "reasonably equivalent value" is too narrow. The reasoning of *Butler Aviation Int'l, Inc. v. Whyte (in re Fairchild Aircraft Corp.),* 6 F.3d 1119 (5th Cir.1993), is persuasive in this regard. *Fairchild* involved the question of whether Fairchild Aircraft Corporation had engaged in a fraudulent transfer by paying a fuel supplier to supply fuel to Air Kentucky Airlines. Fairchild considered Air Kentucky to be a prime potential customer of Fairchild, and also noted the possibility of developing a future relationship with USAir through Air Kentucky.

Air Kentucky faced two threats to its continued existence. First, USAir announced it would terminate its relationship with Air Kentucky, because Air Kentucky had been purchased by a parent corporation of Fairchild. Second, Air Kentucky's fuel suppliers refused to provide any more fuel on credit. If Air Kentucky was forced to cease operations suddenly because of lack of fuel, Fairchild would (1) lose a potential customer in which it had invested millions, (2) have to take back three airplanes (undermining the market for aircraft sales), and (3) possibly

alienate USAir. Fairchild decided to pay for fuel for Air Kentucky, and search for a purchaser of the airline so USAir would not terminate its relationship with Air Kentucky. Fairchild paid over $432,000 to the fuel supplier. Fairchild's parent corporation also found a purchaser for Air Kentucky, but the deal collapsed. Air Kentucky ceased operations, and Fairchild filed bankruptcy nine months later. The fiscal agent appointed to prosecute Fairchild's avoidance actions sought to avoid all of the fuel payments as fraudulent transfers.

The issue before the court was whether the payments for fuel were supported by reasonably equivalent value. The fiscal agent in *Fairchild* presented the same argument as the trustee does in the present case: that the court should only look to goods or services actually received in exchange for the payments. The Fifth Circuit rejected this contention:

> According to Whyte [the fiscal agent], the only value that can be considered is property actually received. Under this view the value of an investment—no matter how large and how probable the potential return—cannot be considered unless it actually pays off, and only to the extent that it does so. Under such a postulation, anyone who provides, deals with, or invests in an entity in financial straits would be doing so at his or her peril under § 548; which means, of course, that few would be likely to do so.
>
> The narrow "realized property" approach to value advanced by Whyte finds no approbation in the law. Rather, the recognized test is whether the investment conferred an economic benefit on the debtor; which benefit is appropriately valued as of the time the investment was made. Courts have considered such indirect financial effects as, for example, the synergy realized from joining two enterprises, the increase in a credit line, and the increased monetary "float" resulting from guarantying the loans of another, as constituting value received under § 548. We conclude that, when viewed within the appropriate frame of reference, the benefits flowing to Fairchild from keeping Air Kentucky in operation is likewise value for purposes of § 548. And, as discussed above, we also

conclude that, for purposes of § 548, the value realized by Fairchild for fuel payments made while Air Kentucky was still flying was sufficient to constitute reasonably equivalent value.

6 F.3d at 1126–27 (footnotes omitted).

### CONCLUSION

It is undisputed in this case that the contract between the debtor and NRR, had it been completed, would have been worth at least its price. There is no allegation that the parties engaged in this transaction with less than good faith. At the time the debtor made the two payments to NRR, it received in exchange "reasonably equivalent value:" the value of the completed contract was equal to the price, the contract retained its validity as a result of the payments, the price of the contract was proportionately decreased by the amount of the payments, and the contract itself was capable of assignment. The fact that the contract was subsequently cancelled through the debtor's default in no way affects the value received by the debtor at the time of the payments. It is thus concluded there are no genuine issues of material fact, and NRR is entitled to judgment in its favor dismissing the plaintiff's complaint.