**In re Virginia Hope CALDWELL, Debtor.**

**No. 01–30616–JWV.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Dec. 28, 2001.

Cobb Young, Joplin, MO, for Debtor.

Juddson H. McPherson, Topeka, KS, for Arvest Bank

Patricia Ann Brown, Joplin, MO, trustee, pro se.

### MEMORANDUM ORDER

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on the Debtor's Motion (Document No. 10) to vacate an Order entered on October 10, 2001, sustaining the Trustee's Objection to the Debtor's Claim of Exemptions (Document No. 7) with respect to a 1996 Lexus automobile, and on the Trustee's Motion to Compel Turnover of Asset and to Distribute Proceeds (Document No. 12). The Court held a hearing on these matters at the Jasper County Courthouse in Carthage, Missouri, on December 20, 2001. The Trustee, Patricia Brown ("Trustee"); Cobb Young, counsel for Virginia Hope Caldwell, the Debtor ("Debtor" or "Virginia"); and Juddson H. McPherson, counsel for Arvest Bank ("Bank"), presented arguments and submitted certain documents by agreement, in lieu of presenting witnesses or other evidence. Counsel agreed that the Court could consider their statements and stipulations as evidence in making its rulings on the issues. The Court took the

matter under advisement and is now ready to rule.

The facts can be briefly stated. Glen Caldwell ("Glen"), the non-debtor spouse of Virginia Caldwell, bought a 1996 Lexus in April 1996. The car was titled in the names of Glen Caldwell and Frankie McCarty ("Frankie"), a woman friend of Glen Caldwell's, and was financed by Southwest Missouri Bank, which held a properly perfected security interest in the car. Glen and Frankie later split up and Glen and Virginia got together. In July 1999, Glen and Virginia (who was Virginia Caylor at that time) went to Arvest Bank in Joplin and obtained a loan of $38,683.74 that was to be secured by a lien on the Lexus. Apparently, this loan was used to pay off the earlier loan that had been obtained from Southwest Missouri Bank. Glen executed a standard form Missouri Department of Revenue Application for Missouri Title and License ("Application"), showing a lien in favor of Arvest Bank effective on February 2, 1999.[1] According to the file stamp on the copy of the Application presented to the Court, the Department of Revenue received the Application on July 2, 1999, the same date as appears on the promissory note. However, for some reason which the parties could not explain, the Department of Revenue rejected the Application,[2] and no one took any further steps to get the title to the Lexus transferred into Glen and Virginia's names or to finalize perfection of the Bank's lien.

Glen and Virginia then married on May 5, 2000, almost a year after executing the promissory note in favor of the Bank, and Virginia filed a Chapter 7 bankruptcy petition on June 8, 2001, almost a year after the marriage. Glen did not join in the bankruptcy filing.

In her bankruptcy schedules, Virginia listed the Lexus as an asset of her bankruptcy estate, with a value in excess of $30,000.00, but claimed it as exempt because she allegedly owned it as a tenant by the entirety with Glen, citing 11 U.S.C. § 522(b)(2)(B). That statute authorizes a married debtor filing separately to exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2)(B). The Trustee on September 13, 2001, objected to this exemption on grounds that the Bank had not perfected its lien in the Lexus, and therefore the car could be liquidated by the Trustee for the benefit of the joint creditors of Virginia and Glen.[3] On October 10, 2001, the Court entered an Order sustaining the Trustee's objections, inasmuch as no response had been filed by either the Debtor or the Bank. On October 19, 2001, the Debtor filed a motion asking the Court to reconsider its Order, and that motion was set for hearing first on Novem-

---

1. The parties were unable to explain why the lien was to be effective in February 1999 although the promissory note was dated in July 1999, but they speculated that Glen Caldwell had had an earlier loan with the Bank that was being rolled into the new note. In any event, this unexplained discrepancy is unimportant to the Court's ruling.

2. There was no evidence that the title showing ownership in Glen and Frankie was sur-

rendered to the Department of Revenue with the application. That could be the reason the application was refused. *See* Mo.Rev.Stat. § 301.210.

3. However, the Trustee was never able to identify any joint creditors other than Arvest Bank. The Debtor's counsel insisted that the Bank was the only joint creditor.

ber 20, 2001, and then on December 20, 2001, at the request of the parties. Apparently on the assumption that she would eventually prevail on her objections, the Trustee filed, on November 5, 2001, a Motion asking the Court to direct the Debtor to surrender the Lexus so it could be sold and the proceeds distributed to the joint creditors and, if any money then remained, to Glen and Virginia equally.

At the hearing on December 20, 2001, however, counsel for Virginia announced that he had ascertained that title to the Lexus had never been transferred to the Debtor, and therefore he had filed amended schedules reflecting that the Debtor had no ownership interest in the Lexus. One of the documents presented to the Court was a printout from the Department of Revenue dated November 9, 2001, showing that title to the car was still in the names of Glen Caldwell and Frankie McCarty. This state of affairs, Debtor's counsel argued, demonstrated that there had never been any intent to transfer an interest in the car to Virginia and that, certainly, she does not have a present ownership interest in it. The Bank supported the Debtor's counsel's argument. On the other hand, the Trustee argued—without any supporting evidence—that there was an intent to make Virginia a co-owner, as a tenant by the entirety, and that therefore the Lexus should be brought into the bankruptcy estate and sold.

■ The Court must rule against the Trustee for one very simple and basic reason: The Trustee has failed to show that the Debtor has any legal or equitable ownership interest in the Lexus. Under Missouri law, the method of obtaining ownership (either alone or with others) of a motor vehicle that is to be registered and licensed in the state is by obtaining a certificate of title, issued by the Department of Revenue, to that motor vehicle. Mo. REV. STAT. § 301.190. *See Lightner v. Farmers Ins. Co., Inc.,* 789 S.W.2d 487, 489 (Mo.1990) (certificate of title is prima facie evidence of ownership which may be rebutted). While the Trustee argues that there was an intent to transfer an interest in the Lexus to the Debtor in July 1999, when the loan was obtained from the Bank, the Trustee has adduced no evidence to support that argument other than the title application. At best, it could be argued that, by obtaining a loan with Virginia to be collateralized by the car and by placing her name on the Application with him, Glen intended to transfer some kind of interest in the Lexus to Virginia. However, in the absence of some further, more substantial proof of the intent of the parties, the Court is not willing to make the leap necessary to reach the conclusion desired by the Trustee. The burden is on the Trustee to produce proof that the Debtor had an ownership interest in the vehicle. *See, e.g., Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990) ("As part of a prima facie case, the trustee must demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt's estate."); *see also* Rule 4003(c), FED. R. BANK. P.[4] The Trustee has failed to meet that burden.

■ Moreover, even if the Trustee had met that burden, she would not be able to establish, on the evidence presented, that the Debtor's interest in the Lexus was that of a tenant by the entirety, as she has argued. The Application was executed in July 1999, and Glen and Virginia were not married until May 2000, almost a year later. "Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire

---

**4.** (c) Burden of proof—In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. Rule 4003(c), FED. R. BANK. P.

property, rather than a share or divisible part, and thus at the death of a spouse, the surviving spouse continues to hold title to the property." *Rinehart v. Anderson,* 985 S.W.2d 363, 367 (Mo.App.1998). Even if a title had been issued in the form requested by Glen in July 1999, it appears that Virginia at most would have been a joint owner with Glen, since they were not married at the time the Application was submitted; there is no indication on the Application that they were to hold title as tenants in common, as required by Missouri law. Mo. REV. STAT. §§ 301.675, 301.679.1. In fact, the printout from the Department of Revenue showing that the car is titled in the names of Glen Caldwell and Frankie McCarty, without more, suggests that Frankie McCarty still is a joint tenant with right of survivorship in the Lexus. *Id.*

For these reasons, the Court will grant the Debtor's Motion (Document No. 10) to vacate the Order entered on October 10, 2001, sustaining the Trustee's Objections to the Debtor's claim of exemptions, and will deny both the Trustee's Objections to the Debtor's Claim of Exemptions (Document No. 7) and the Trustee's Motion to Compel Turnover of Asset and to Distribute Proceeds (Document No. 12).

The Court cannot, in good conscience, put this matter to rest without commenting on the poor manner in which the parties have addressed the issues involved and presented them to the Court. The attorneys and the Trustee told the Court that they had stipulated to the facts, but they had not reduced any stipulations to writing and, in fact, the Court was able to establish most of the relevant facts only through persistent questioning of the attorneys and the Trustee. More importantly, the Trustee apparently undertook no investigation into the state of the title to the Lexus before filing her objections, and assumed facts that she was ultimately unable to prove (namely, that the Lexus was titled, in the first place, and that it was titled in the names of the Debtor and Glen Caldwell as tenants by the entireties, in the second place). These problems could have been avoided by diligent inquiry early on. Although she had filed an application on December 19, 2001, for approval to employ counsel, the Trustee (who is not an attorney) appeared at the hearing without benefit of counsel and failed to present any meaningful or pertinent evidence or arguments for resolution of the issues before the Court. With a proper presentation of evidence, it is possible that the Trustee could have recovered a substantial asset for the benefit of creditors in this case; as it is, any opportunity to make such a recovery has been lost. Counsel for the Debtor did little better; he, too, apparently never made any investigation into the state of the title until sometime in November, approximately five months after the bankruptcy was filed and almost two months after the Trustee filed her objections, when he apparently obtained a report from the Department of Revenue which—much to his surprise—showed that the Debtor actually had no ownership interest in the Lexus.[5] Both the Trustee and counsel for the Debtor argued that certain results had been intended by the parties, but neither of them adduced any evidence to prove that any such intentions had ever existed. Intent can rarely be shown by oral argument. Finally, as for the Bank, its performance will not win any medals, either; even though it stood to

---

**5.** Mr. Young was not the Debtor's attorney when the case was filed, and it is not clear from the Court's file when Mr. Young entered the case. It appears Mr. Young may have filed the amended schedules for the Debtor in August 2001, but that cannot be said with certainty because the amended schedules were not signed or verified in any way. Mr. Young has never filed an entry of appearance or a disclosure of compensation in this case.

lose a luxury automobile as collateral for a loan it had made in 1999, it appears that the Bank's counsel did not discover the state of the title before the Debtor's counsel made the discovery that he did. As it turns out, the Bank bumbled and stumbled its way into a good final result.

In short, the parties have done a very poor job of presenting the issues here to the Court, and they are admonished to do a better job in the future. If they do not, they can expect more—and harsher—admonitions.

Therefore, it is

.ORDERED that the Debtor's Motion (Document No. 10) to vacate the Order entered on October 10, 2001, sustaining the Trustee's Objections to the Debtor's claim of exemptions, be and is hereby GRANTED, and the Trustee's Objections to the Debtor's Claim of Exemptions (Document No. 7) and the Trustee's Motion to Compel Turnover of Asset and to Distribute Proceeds (Document No. 12) are DENIED.

SO ORDERED.