In re Wallace G. **WILKINSON**, Debtor.

Charles J. Lisle, as Trustee of the Trust established under the Amended Liquidating Plan of Reorganization of the Official Committee of Unsecured Creditors for the Debtor, Wallace G. Wilkinson, Plaintiff,

v.

John Wiley & Sons, Inc., Defendant.

Bankruptcy No. 01–50281.
Adversary No. 03–5039.

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

June 15, 2004.

Richard Boydston, Cincinnati, OH, for plaintiff Trustee.

James W. Gardner, Lexington, KY, for defendant.

## MEMORANDUM OPINION

### 1. Introduction and procedural background

This matter is before the court on the Defendant's Motion for Summary Judgment filed herein on March 26, 2004, and on the Plaintiff's Motion for Summary Judgment and Motion for an Order Excluding the Testimony of Donald J. Mullineaux, Ph.D., filed on April 1, 2004. The Plaintiff's Amended Complaint filed on February 2, 2003 asserts claims under Sections 547, 548, and 550 of the Bankruptcy Code, and under KRS 378.020. The Defendant filed its Answer to Amended Complaint with jury demand on April 30, 2003. The Defendant did not consent to this court's conducting a jury trial, and filed a Motion to Withdraw the Reference on May 8, 2003. By order entered on September 11, 2003, the United States District Court for the Eastern District of Kentucky granted the motion and a jury trial is currently set for September 1, 2004. The Defendant filed its Expert Witness Report of Dr. Donald J. Mullineaux on December 29, 2003. The Plaintiff also filed various expert witness reports. All preliminary matters including hearings on dispositive motions are to be heard by this court.

A hearing on the motions for summary judgment and for an order excluding Dr. Mullineaux's testimony was held on May 19, 2004. The Plaintiff announced that he would not pursue his preference claim, and argument was heard only on the claim of fraudulent transfer and on the question of exclusion of Dr. Mullineaux's testimony. At the conclusion of the hearing the court took the matter under submission, and it is now ripe for decision.

### 2. Factual background

The record in this case indicates that it was commenced by the filing of an involuntary petition by nine of the Debtor's creditors on February 5, 2001. The Debtor then filed a voluntary Chapter 11 petition on February 12, 2001, and on December 14, 2002, the court confirmed the Amended Liquidating Plan of Reorganization of the Official Committee of Unsecured Creditors ("the Wilkinson Plan"). The Plaintiff is the trustee of the trust established under the Wilkinson Plan and is authorized to pursue claims for the benefit of the estate.

The Debtor was the majority shareholder of Wallace's Bookstores, Inc. ("WBI"). WBI, through its subsidiaries and in conjunction with Wallace's Book Company, Inc. ("WBC"), was one of the largest integrated college and university textbook management operations in the United States. On February 28, 2001, WBI and WBC and 60 subsidiaries filed voluntary Chapter 11 petitions in the U.S. Bankruptcy Court for the District of Delaware (seven more were added later). Those cases were transferred to this court on March 2, 2001 and ordered to be jointly administered. The Revised Second Amended Joint Consolidation Plan of Liquidation of Wallace's Bookstores, Inc., Its Subsidiaries and Wallace's Book Company, Inc. was confirmed by order entered on May 20, 2002.

The Defendant was one of the six members of the single official committee of unsecured creditors appointed in the WBI case. The Defendant, a book publisher, alleges that it had a long-standing relationship with WBI. In the period before the transfer at issue in this proceeding, WBI placed orders for books, but the Defendant refused to ship because WBI had an outstanding balance in the approximate amount of $2.4 million. On January 4, 2001, the Debtor transferred $1 million to

the Defendant from his personal account, and the shipment of books ordered was released. The pending orders totaled $1.2 million for WBI and $500,000 for another of the Debtor's entities, eCampus.com (now finis.com). The Defendant also released another $500,000 in orders to WBI. The entire $1 million transfer was applied to the WBI account. Both the Debtor and WBI showed the transfer on their respective books as a reduction in the amount the Debtor owed WBI.

### 3. The summary judgment standard

Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, provides that summary judgment is appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has observed that

> this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)(emphasis in original).

The summary judgment standard is set out in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The Sixth Circuit has opined that "[r]ead together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

### 4. The claim of fraudulent transfer pursuant to 11 U.S.C. § 548

■■■ The Defendant's Motion for Summary Judgment addresses the issue of whether the transfer was fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B) which provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . .
>
> (B)(I) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insol-

vent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

The trustee must prove by a preponderance of the evidence that the requirements set out in § 548(a)(1)(B) have been met. *Wessinger v. Spivey, et al. (In re Galbreath),* 286 B.R. 185, 197 (Bankr.S.D.Ga. 2002). The Defendant contends that the Plaintiff cannot prove that the Debtor received less than reasonably equivalent value in exchange for the transfer; it apparently does not dispute that the $1 million was property of the Debtor or that he was insolvent at the time of the transfer.

■ The Bankruptcy Code does not define "reasonably equivalent value," but defines "value" for the purpose of determining whether a transfer is fraudulent as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2). Determination of reasonably equivalent value is a question of fact. *See, e.g., Texas Truck Ins. Agency, Inc. v. Cure (In re Dunham),* 110 F.3d 286, 289 (5th Cir.1997). Analysis of the exchange for which reasonably equivalent value is alleged is conducted on the basis of the facts and circumstances of each case, rather than a fixed mathematical formula. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.),* 92 F.3d 139, 148–49 (3rd Cir.1996); *Rubin v. Mfrs. Hanover Trust Co.,* 661 F.2d 979, 994 (2nd Cir. 1981). Value has been defined as that which provides an economic benefit, either direct or indirect, to the debtor. *Baum-*

*gart v. Bedlyn, Inc. (In re Empire Interiors, Inc.),* 248 B.R. 305, 308 (Bankr. N.D.Ohio 2000); *Harker v. Center Motors, Inc. (In re Gerdes),* 246 B.R. 311, 313 (Bankr.S.D.Ohio 2000).

■ The Defendant contends that the Debtor received both direct and indirect benefit as a result of the transfer. In regard to direct benefit, it argues that the credit which the Debtor received from WBI constitutes a direct benefit in the amount of $1 million. The Defendant points to WBI's proofs of claim (claim numbers 76 and 77)filed along with attached exhibits in this case on September 13, 2001, as showing that the Debtor received a dollar-for-dollar reduction in his indebtedness to WBI as a result of the transfer. In support of its contention that the Debtor's debt reduction was a direct benefit, the Defendant cites *Marshack v. Wells Fargo Bank (In re Walters),* 163 B.R. 575 (Bankr.C.D.Cal.1994). There the debtor was personally liable under a guaranty of partnership debt, and his payments on that guaranty constituted reasonably equivalent value since they resulted in a dollar-for-dollar reduction in his liability thereunder. *Id.* at 581. The Defendant maintains that the situation here is analogous.

The Plaintiff's response to the contention of direct benefit is to challenge the value of the transfer. According to the Plaintiff's expert, Jane Ciancanelli,

As a result of the Transfer to John Wiley, Mr. Wilkinson reduced the book value of the amount he owed WBI by $1,000,000. In the event the Court determines that the reduction in the debt owed to WBI constitutes value received from John Wiley in exchange for Mr. Wilkinson's Transfer of $1,000,000, I have estimated the value that Mr. Wilkinson received from the reduction in his debt to be no more than $61,003. Con-

sequently, even if the reduction in debt owed to WBI were to be considered value received from John Wiley in exchange for the transfer of $1,000,000, Mr. Wilkinson did not receive reasonably equivalent value for the transfer. ... WBI filed a claim against Mr. Wilkinson's estate in the amount of $60.1 million.... Through negotiations between the Trustee and WBI, the $60 million claim of WBI was reduced to $31 million, 52% of the original value, reflecting a settlement between the two parties. In addition to the reduction in value of the WBI claim resulting from the settlement, the value of the WBI claim is significantly less than $31 million given the deep insolvency of Mr. Wilkinson. It is my understanding that the Trustee currently estimates that creditors will be paid less than 3% on their claims.... [T]he estimated value of $15,474 received by Mr. Wilkinson from the reduction in debt owed to WBI reflect[s] the settlement and the Trustee's current estimate of payments to creditors.... I have also considered the results of my valuation analysis in determining the value of the reduction in the debt owed to WBI.... [M]y valuation analysis estimates the value of Mr. Wilkinson's assets to be $41 million or 12% of the value of Mr. Wilkinson's liabilities of $349 million at the Valuation Date. For the reasons discussed above and because my analysis does not reflect liquidation values, the results of my analysis provide a maximum estimate of the value associated with a claim against the Wilkinson bankruptcy estate.... [T]he value Mr. Wilkinson received from the reduction in the debt owed to WBI was no more than $61,003.

(Ciancanelli Report, 12/29/03, pp. 21–22). The Plaintiff states in his response that the purpose of Ms. Ciancanelli's valuation is to "quantify the difference in the fair value and the book value of the alleged Wilkinson debt to WBI and any reduction in that value by reason of the Transfer." The comparison of fair value and book value and whether a transfer reduces value is a means of determining the debtor's solvency. *See, e.g., WRT Creditors Liquidation Trust v. WRT Bankr.Litig. Master File Defendants (In re WRT Energy Corp.)*, 282 B.R. 343 (Bankr.W.D.La.2001).

The court also notes that cases cited by the Plaintiff in support of the contention that the Ciancanelli Report properly considered subsequent events in analyzing whether the Debtor received a direct benefit by reason of WBI's debt reduction address the issue of solvency in preference actions. In any event, this court is not faced with the task of valuing the Debtor's assets for the purpose of determining whether he was insolvent at the time of the transfer; all agree that he was. Further, even in determining solvency, the appropriate valuation date for avoidance purposes is the date of the subject transfer. *In re WRT Energy Corp.*, 282 B.R. at 368.

■ The Defendant cites *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458 (4th Cir.1990) in support of the proposition that a transfer must be valued at the time it is made. There the court stated: "The sole issue between the parties thus is whether the debtor-transferor received in exchange the reasonably 'fair equivalent value' of the transferred property. The date for defining such reasonable equivalence is the date of transfer...." *Id.* at 466. *See also Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1126 (5th Cir.1993). Further, "[s]ubsequent appreciation or depreciation should not, and does not, transform a transfer for reasonably equivalent value

into a fraudulent transfer." *Krommenhoek v. Natural Resources Recovery, Inc. (In re Treasure Valley Opportunities, Inc.)*, 166 B.R. 701, 704 (Bankr.D.Idaho 1994). The Plaintiff argues that the "by-products" of the Debtor's insolvency (the settlement and the claims process referred to in the Ciancanelli Report) are valid bases for determining reasonably equivalent value, and that they are not future events, but he cites no authority to support this proposition. All of the foregoing does, however, support the Defendant's contention that the Debtor received reasonably equivalent value from the WBI debt reduction. This court therefore finds that the Defendant has borne its burden of proof on that issue, that there is no genuine issue as to any material fact, and that the Defendant should have summary judgment on the Plaintiff's claim of a fraudulent transfer pursuant to § 548(a)(1)(B).

### 5. *The claim of fraudulent transfer pursuant to KRS 378.020*

■ The Defendant maintains that since the Plaintiff cannot demonstrate that a constructively fraudulent transfer occurred pursuant to the Bankruptcy Code, his state law claim must fail as well. The Defendant does not separately address the requirement of "valuable consideration" under KRS 378.020. That statute provides in pertinent part that "[e]very gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors . . . ." The Plaintiff responds that the Defendant is not entitled to summary judgment on this issue, stating that the Defendant never directly transferred anything to the Debtor and characterizing the reduction of the Debtor's "alleged" debt to WBI as an "indirect benefit," apparently now equating "benefit" with "transfer." He cites two Kentucky cases, *Kitchen v.*

*Fischer*, 293 Ky. 787, 170 S.W.2d 592 (1943) and *Pope v. Cawood*, 293 Ky. 389, 168 S.W.2d 985 (1943), which deal with transfers of real estate and stock, respectively. These cases hold that a transfer for less than "a fair and reasonable price" is void.

The Plaintiff then returns to his valuation argument to maintain that the debt reduction by WBI was not worth $1 million, and that therefore the Debtor could not have received valuable consideration in return for his transfer of that amount to the Defendant. If this court accepts the premise that the Debtor received a direct benefit by way of the debt reduction, the Plaintiff's arguments are ineffectual in the state law context as well as in the bankruptcy context. Further, Kentucky courts have recognized that "a benefit to accrue to a third person is a valuable consideration." *Burnett's Adm'x v. Farmers' Nat'l Bank*, 243 Ky. 760, 49 S.W.2d 1033, 1034 (1932). This court therefore also finds that the Defendant should have summary judgment on the Plaintiff's claim of a fraudulent transfer pursuant to KRS 373.020.

### 6. *Conclusion*

The Plaintiff has abandoned his claim of a preferential transfer pursuant to § 547(b), and that claim is therefore not before the court. The Defendant has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law that the Debtor's transfer to it of $1 million was not constructively fraudulent, either under the Bankruptcy Code or Kentucky state law. As a result of this determination, the Plaintiff's claim that any avoided transfer should be recovered for the benefit of the estate is now moot. Further, since the court has determined that the Debtor received a direct benefit from the transfer, the question of exclusion of Dr. Mulli-

neaux's testimony is also moot as his testimony went to the issue of indirect benefit. Summary judgment will therefore be entered for the Defendant on all counts of the Plaintiff's Amended Complaint.