In re Dorian HAYES, Debtor.

Mark Shapiro, Trustee, Plaintiff,

v.

John Matouk, Defendant.

Bankruptcy No. 03–61751.
Adversary No. 04–4134.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 8, 2005.

Danny A. Kallabat, Southfield, MI, for Debtor.

Tracy M. Clark, Southfield, MI, for Trustee.

Mark H. Shapiro, Southfield, MI, pro se.

Gordon S. Gold, Southfield, MI, for Defendant.

## Opinion

STEVEN W. RHODES, Chief Judge.

### I.

Dorian Hayes filed a voluntary chapter 7 bankruptcy petition on August 5, 2003. Mark Shapiro was appointed as trustee. The original schedules filed by Hayes disclosed only nominal assets, which included household goods and furnishings having an approximate value of $10,000 and clothing having a value of $1,000. Neither the schedules nor the statement of financial affairs disclosed any present interests in businesses.

Shapiro subsequently learned that Hayes had assets substantially in excess of those disclosed in the schedules, including an interest in a business called Coco Interiors. Following substantial litigation in this case, Hayes waived her exemptions and her discharge. On January 3, 2004, the Court entered an "Ex Parte Order Allowing Trustee to Access and Inspect Debtor's Residence; To Remove Nonexempt Property of the Estate and For Other Relief." Pursuant to the Order, Shapiro inspected Hayes's residence on two occasions. On the second occasion, Shapiro removed most, but not all, of the property of the estate.

While Shapiro was conducting the inspection, John Matouk advised Shapiro that some of the property in Hayes's home belonged to him. Matouk and Hayes eventually produced a written list, dated January 5, 2003, of the property which Matouk claimed to have purchased from Hayes for a total of $150,000 (the "Matouk list"). This list included the children's

bedroom sets, doll collection, and toy car collection, as well as other household items such as art work and furniture.

On January 23, 2004, Shapiro filed this adversary proceeding against Matouk alleging fraudulent conveyance and preference claims regarding the transfer of the property on the "Matouk list." Shapiro asserts that Hayes's transfer of ownership of the property on the "Matouk list" was a fraudulent conveyance under both 11 U.S.C. § 548 and M.C.L. § 566.35. Additionally, Shapiro asserts that the transfer was a preference under 11 U.S.C. § 547(b).

Matouk denies the allegations in the complaint. He asserts that he is a good faith purchaser and that he agreed to purchase the property for more than what he believed their actual value was in order to help Hayes. Additionally, Matouk asserts that he was not a creditor of Hayes when he purchased the property and that therefore the transfer of ownership was not a preference.

On May 7, 2004, Matouk objected to Shapiro's motion for authority to conduct an auction, but Matouk and Shapiro reached a settlement in which Matouk agreed to the inclusion of the property on the "Matouk list" in the auction. In exchange, Shapiro agreed to the allowance of a general unsecured claim in an amount equal to whatever consideration Matouk proves he gave to Hayes.

## II.

11 U.S.C. § 548 provides in relevant part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548.

■ The trustee bears the burden of proving the elements of a fraudulent conveyance by a preponderance of the evidence. *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134 (Bankr. E.D.Ky.2004). The first requirement is that there was a transfer of the debtor's property.

The transaction that Shapiro seeks to avoid is the sale of Hayes's personal property to Matouk. However, Shapiro has stated that he does not believe there really was a transfer. In his objection to Debtor's Exemptions filed November 7, 2003, Shapiro stated, "The Trustee does not believe the 'sale' of the Debtor's household goods to have occurred contemporaneously with the date appearing on Exhibit C. [The Matouk list] Nor does the Trustee believe the Debtor and Mr. Matouk intended to actually transfer title to the items listed from the Debtor to Mr. Matouk." Additionally, in the joint pre-trial order, Shapiro stated that he "vehemently disputes" the factual allegations presented by Matouk and Hayes.

Hayes testified that she did sell her personal property to Matouk. However, when asked how the agreement was reached, Hayes's response was vague.

"We just—we spoke about it, and we just ended up writing it down. We just sat down and did it one day. That Day. January 5th." Hayes did not remember whose idea it was to sell Matouk the personal property and she did not remember how long they might have negotiated regarding which property to sell. She stated she thought the entire document was drafted at once but maybe it was not. She also stated that she came up with the $150,000 sale price because that was how much she thought she needed. Hayes also was not sure exactly when the $150,000 was paid because Matouk gave her money both before and after the time frame stated in the document and she "could not separate it." The Court also notes that Hayes did not disclose the alleged transfer in her initial schedules filed on August 5, 2003. On November 3, 2003, Hayes amended her schedules and disclosed the transfer, asserting that the $150,000 was paid over approximately 12 months. On November 20, 2003, Hayes again amended her schedules to add the "Matouk list" as an attachment to the statement of financial affairs.

Matouk did not testify at trial. In his deposition, he testified that some of the $150,000 consideration was paid before January 5, 2003. He also testified that he paid a total of $165,000 before April 2003. However, Matouk provided no documentation of any payments that he made before July 2003. The only documentation Matouk provided was a ledger of cash given to Hayes and payments made on her behalf from July 2003 through June 2004. The total reflected in the ledger is over $300,000.

■ An intent to transfer ownership is a necessary element of a sale. *Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1316 (10th Cir.2000); *McGavin v. Segal (In re McGavin),* 189 F.3d 1215, 1219 (10th Cir.1999); *Michener v. Brady (In re Brady),* 243 B.R. 253, 262 (E.D.Pa. 2000); *S.A.M. Electronics, Inc. v. Osaraprasop,* 39 F.Supp.2d 1074, 1080 (N.D.Ill. 1999); *In re Bell–Breslin,* 283 B.R. 834, 838 (Bankr.D.Md.2002); *In re Caldwell,* 271 B.R. 621, 624 (Bankr.W.D.Mo.2001); *Energy Cooperative, Inc. v. Permian Corp. (In re Energy Cooperative, Inc.),* 94 B.R. 975, 979 (N.D.Ill.1988); *First Inter-State Bank v. Weathersfield Farms, Inc. (In re Weathersfield Farms, Inc.),* 11 B.R. 148, 152 (Bankr.D.Vt.1980).

■ However, the Court concludes that the alleged sale, allegedly documented by the "Matouk list," was a sham undertaken with no real intent to transfer ownership of Hayes's property to Matouk. Rather, it appears to the Court that the "Matouk list" was created to defraud Hayes's creditors, the trustee and, ultimately, the Court itself. The Court so concludes based on the following facts:

(1) Matouk and Hayes had an intimate relationship at the time the alleged transfer occurred.

(2) Matouk generously supported Hayes and her family for several months before and after the alleged transfer.

(3) The "Matouk list" explicitly stated that Matouk's payments of $150,000 to Hayes for the property would be from January to April 2004. However, Matouk produced no documentation evidencing such payments, even though well thereafter, he did document his payments of more than $300,000.

(4) Matouk allowed Hayes and her children to keep possession and control of the personal property after the alleged transaction and they maintained full and exclusive use and control of the property. This is strong evidence that the parties had no actual intent to transfer ownership. *See Estate of Harris v. Harris,* 218 F.3d 1140, 1148 (10th Cir.2000); *Brown v. United*

*States,* 622 F.Supp. 1047, 1049 (D.S.D. 1985); *Rohweder v. Aberdeen Prod. Credit Ass'n,* 765 F.2d 109, 113 (8th Cir.1985); *Barfield v. Sana of Jacksonville, Inc. (In re Barfield),* 261 B.R. 793, 799 (Bankr. M.D.Fla.2001); *Schreiber v. Stephenson (In re Emerson),* 235 B.R. 702, 710 (Bankr. D.N.H.1999).

(5) Even though some property used by Hayes's children was on the "Matouk list," Matouk did not object to Hayes's assertion that the children owned that property.

(6) Hayes did not disclose the transfer in her initial statement of financial affairs.

Simply put, Hayes and Matouk were not credible witnesses. Indeed, the Court finds it highly unlikely that Hayes and Matouk drafted the "Matouk list" on January 5, 2003. Rather, it seems much more likely that they drafted the "Matouk list" after the trustee began to pursue Hayes's personal property in a crude attempt to protect her property from the trustee and her creditors.

The Court cannot find that Hayes and Matouk intended to transfer ownership of the property on the "Matouk list." Rather, the Court finds that the list was simply another gift from Matouk to Hayes, to help her out in yet another way.

Because Hayes did not actually transfer any property to Matouk, the trustee's fraudulent conveyance and preferential transfer claims must be dismissed. However, for the same reason, all of the property on the "Matouk list" was property of the estate when the trustee sold it, and accordingly, Matouk has no claim to the sale proceeds.

An appropriate order will be entered.